NORTHERN INSURANCE COMPANY OF NEW YORK, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (6th Division)   No. 1—99—3334

Opinion filed November 2, 2001.

Peter C. Morse and David J. Roe, both of Morse & Bolduc, of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Northern Insurance Company of New York (Northern) brought this declaratory judgment action against its insured, the City of Chicago (City). Northern's complaint alleged that, because the City failed to provide timely notice of a pending action, Northern owed no duty to defend or indemnify the City. The trial court granted the City's motion for summary judgment and awarded the City $24,000 plus costs and expenses. Northern appeals, arguing that the trial court erred in granting the City's summary judgment motion because the City failed to provide timely notice of an underlying action and that the trial court should have stricken the City's summary judgment motion. The City disagrees, arguing that Northern is estopped from asserting a late-notice defense. For the following reasons, we reverse and grant summary judgment in favor of Northern.

## BACKGROUND

In May 1993, Vixen Construction, Inc. (Vixen), contracted with the State of Illinois to repair the streets, sidewalks and parking meters along North Lincoln Avenue in Chicago. Pursuant to an ordinance, Vixen applied for a construction permit. To receive a permit, construction companies must present proof of insurance and agree to indemnify the City against losses arising from the construction. Such insurance coverage must include the City, its officers, employees, and agents as additional insureds. The City issued Vixen's permit on May 14, 1993.

In July 1994, Northern issued two policies to Vixen. The policies provided coverage between July 1994 and July 1995 and named the City as an additional insured. The policies provided in part that Northern would "pay those sums that the insured becomes legally obligated to pay as damages" and that Northern would "have the right and duty to defend any 'suit' seeking those damages." More specifically, the policies provided:

"2. Duties in the Event of Occurrence, Offense, Claim or Suit

a. [Vixen or the City] must see to it that [Northern is] notified *as soon as practicable* of an 'occurrence' or an offense which may result in a claim.

\*\*\*

b. If a claim is made or 'suit' is brought against any insured, [Vixen or the City] must:

\*\*\*

2. Notify [Northern] *as soon as practicable*. [Vixen or the

City] must see to it that [Northern receives] written notice of the claim or 'suit' *as soon as practicable.*

\*\*\*

d. No insured will, *except at their own cost,* voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without [Northern's] consent." (Emphasis added.)

After Vixen completed construction, Karim Sadny allegedly tripped and fell on North Lincoln Avenue in December 1994. Sadny filed suit against the City (*Sadny v. City of Chicago,* No. 95—L—14597 (Cir. Ct. Cook Co.)), alleging that the sidewalk was defective. The City was served with a summons and copy of Sadny's complaint on October 11, 1995.

For the next two years and two months, the City dealt with Sadny's suit on its own and made no attempt to discover who Vixen had contracted to be its, and the City's, insurer. On December 17, 1997, the City's counsel sent Vixen a facsimile requesting to view the certificates of insurance and any relevant contract between Vixen and the City about the North Lincoln Avenue project.

When the City had not received any information from Vixen by February 25, 1998, it sought copies of the contract and insurance certificates from the State of Illinois pursuant to the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 1998)). In March 1998, the State provided the City with a copy of the contract but no longer had possession of the insurance certificates.

On March 30, 1998, the City finally identified Northern as its insurer, informed Northern of Sadny's suit, and requested that Northern defend and indemnify the City. On August 18, 1998, Northern sent the City a letter denying this request for two reasons: first, the City had failed to provide an insurance certificate naming it as an additional insured on Vixen's policies, and second, assuming that Vixen's policy covered the City as an additional insured, the City had failed to notify Northern "as soon as practicable of an 'occurrence' or an offense which \*\*\* result[ed] in a claim" as required under the policy.

In September 1998, the City sent Vixen a subpoena for its insurance certificate. Vixen informed the City that it no longer had documentation relating to the North Lincoln Avenue construction project.

On January 5, 1999, the City sent a letter advising Northern that it had settled Sadny's suit for $24,000. In addition to renewing its request for indemnification, the City demanded an additional $4,200 for costs in defending the suit. Less than 30 days later, on February 2, 1999, Northern filed for declaratory judgment against the City.

The City filed an answer and a cross-complaint against Northern and Vixen for declaratory relief and sanctions. In March 1999, Northern moved for summary judgment, arguing that the City's untimely notice excused its failure to defend or indemnify the City. The City also moved for summary judgment, arguing, *inter alia*, that Northern's failure to either defend the City under a reservation of rights or to file a timely declaratory judgment action estopped it from asserting the untimeliness of the City's notice as a defense. Northern filed a motion to strike the City's summary judgment motion. Following a hearing, the trial court ordered the City to file affidavits supporting its summary judgment motion. Both the City and Northern filed replies to each other's summary judgment motions.

On July 15, 1999, the court heard arguments on the parties' summary judgment motions. The court granted the City's motion and ordered Northern to pay $24,000 plus costs and expenses in the City's favor. Northern appeals.

## ANALYSIS

As mentioned above, Northern raised the City's failure to produce a certificate indicating that it was an additional insured on the Vixen policies as a ground for denying coverage in August 1998. It must be noted at the outset of our decision that, to this day, the record remains silent as to any evidence of an insurance certificate naming the City as an additional insured. Accordingly, we could reverse the trial court's decision on the basis that there is no proof that Northern had the duty to defend or indemnify the City, since the certificate—an agreement to provide insurance—has never been presented to this, or any, court. See *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 143 (1999) (insurer's duty to defend rests on whether it had actual notice of suit falling within scope of policy coverage); *United States Fire Insurance Co. v. Hartford Insurance Co.*, 312 Ill. App. 3d 153, 154-55 (2000). However, Northern specifically states in its appellate brief that it chooses not to argue the issue of whether the City was an additional insured. Therefore, for purposes of this appeal, we shall assume that the City was so insured and instead address the applicable issues of delay and estoppel.

Primarily, Northern argues that the trial court improperly granted summary judgment in the City's favor because the City failed to provide timely notice of Sadny's suit as required under the insurance policy. The City disagrees, arguing that because Northern failed to either defend the suit under a reservation of rights or seek a timely declaratory judgment, Northern is estopped from raising the City's late notice as a defense and summary judgment was proper.

■ In ruling on a motion for summary judgment, the court must construe the pleadings, depositions and affidavits strictly against the movant and in favor of the opposing party. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 483 (1998). Summary judgment is appropriate where the pleadings, depositions, admissions and affidavits, taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Majca v. Beekil*, 183 Ill. 2d 407, 416 (1998). We review the trial court's grant of summary judgment *de novo. In re Estate of Rennick*, 181 Ill. 2d 395, 401 (1998).

### A. The City's Delay in Giving Notice to Northern was Unreasonable

■ The insurance contract controls the insured's duties. *Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.*, 313 Ill. App. 3d 457, 464 (2000). When such a contract includes a provision requiring the insured to notify the insurer of a suit against it, this provision is not just a technical requirement but a "condition precedent to the triggering of the insurer's contractual duties." *Northbrook Property*, 313 Ill. App. 3d at 464. When the insured fails to comply with this provision to give notice, the insurer may be relieved from its duty to defend and indemnify the insured under the policy. *Northbrook Property*, 313 Ill. App. 3d at 464; *INA Insurance Co. of Illinois v. City of Chicago*, 62 Ill. App. 3d 80, 83 (1978).

■ Illinois courts have dealt on several occasions with insurance notice provisions identical to the one in the instant case, which calls for the City to notify Northern of any suit "as soon as practicable." *Twin City Fire Insurance Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 7-8 (1993). From this, our law has established that the phrase "as soon as practicable" requires the insured to notify the insurer of the impending suit within a reasonable time. *Northbrook Property*, 313 Ill. App. 3d at 465. Whether the time at issue, that between the insured's knowledge of the suit and its notification to the insurer, is reasonable depends on the facts and circumstances of each case. *Northbrook Property*, 313 Ill. App. 3d at 465; *Twin City*, 266 Ill. App. 3d at 7 (test is whether any reasonably prudent person could foresee a suit involving the policy and would contact insurer).

■ The insured is expected to act with due diligence when its policy requires it to give notice of a suit to the insurer. *Northbrook Property*, 313 Ill. App. 3d at 465. And while the timeliness of the notice is generally a question of fact, this issue can be resolved as a matter of law where, as here, no material facts are in dispute. *Twin City*, 266 Ill. App. 3d at 7; *INA Insurance Co.*, 62 Ill. App. 3d at 83.

■ An insured who knows a suit against it exists but allows a considerable length of time to pass before notifying the insurer does not automatically lose coverage under the insurance policy, even one which includes the "as soon as practicable" provision. *Northbrook Property*, 313 Ill. App. 3d at 465. This is true, however, only if the insured's delay in notifying the insurer is justifiable. *Northbrook Property*, 313 Ill. App. 3d at 466 (absent valid excuse, "the insured's failure to satisfy the notice requirement will generally absolve the insurer of its duties under the policy"). To determine this, we evaluate several factors, including the language of the notice provision, the insured's sophistication in commerce and insurance matters, its awareness that a suit was pending and once aware, its diligence in ascertaining whether policy coverage is available. *Northbrook Property*, 313 Ill. App. 3d at 466.

■ In the instant case, the City, as the insured, is controlled by the provisions in the insurance policy with Northern. As outlined above, several provisions of that policy clearly state that the City is required to give Northern notice of any event that may result in a suit as soon as practicable. This is a condition precedent to triggering Northern's duty to defend and indemnify the City. In addition, the policy specifies that any payment the City makes or expense it incurs without Northern's consent is at the City's own expense.

The facts here are undisputed. Sadny's accident occurred on December 8, 1994. The City was served with a complaint and summons regarding Sadny's suit on October 11, 1995. It is clear that, by October 11, 1995, the City knew of Sadny's accident and that it was not only foreseeable but certain that it was facing a lawsuit over the North Lincoln Avenue construction project. However, the City did not notify Northern of the suit until March 30, 1998, almost 2½ years later.

This length of time alone does not automatically end the City's entitlement to coverage under the policy. However, the City must provide a justifiable excuse for its delay. Yet neither the record nor the City's appellate brief provides any explanation for this 2½-year delay. Therefore, Northern is excused from its duties, as the City breached the policy by its unexcused delay. See *Northbrook Property*, 313 Ill. App. 3d at 466.

What perhaps may be gleaned from the City's appellate brief as an excuse for this delay is that it, for whatever reason, did not know or remember construction took place on North Lincoln Avenue, that Vixen was the contractor or that Vixen must have taken out insurance on the project naming the City an additional insurer as required by ordinance. Hence, the City argues, it was unable to learn that

Northern was its insurer and to notify Northern of Sadny's suit. However, this same argument was rejected by this court in *International Harvester Co. v. Continental Casualty Co.*, 33 Ill. App. 2d 467, 472-73 (1962).

Moreover, it is implausible to believe that the City could not discover Northern was its insurer sometime before 2½ years had passed. The City entered into an insurance contract containing several commonly used and clearly understood clauses. The notice provisions requiring it to inform Northern "as soon as practicable" of a suit were such provisions. See *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 236 (1983) ("as soon as practicable" provision is not ambiguous, illegal or against public policy and thus should be enforced by the courts). The City, one of the largest municipalities in the country and possessing its own in-house legal department, is hardly unsophisticated in commercial and insurance matters. *INA Insurance Co.*, 62 Ill. App. 3d at 85 (City is "experienced in the complexities of construction contracts and liability insurance"). Also, the City was indisputably aware that Sadny had filed a lawsuit against it. Yet it exercised no diligence in ascertaining its policy coverage under Northern. The record indicates that, at the time the City received the summons in the Sadny suit, it had in its own computer system information allowing it to obtain Northern's name as its insurer on the North Lincoln Avenue project. The failure to further investigate beyond whatever routine search the City conducted, if any, when it received the summons is a fault that lies with the City. *INA Insurance Co.*, 62 Ill. App. 3d at 85; see *City of Chicago v. United States Fire Insurance Co.*, 124 Ill. App. 2d 340, 345-47 (1970) (where City's policy of insurance issued on construction project was in its physical possession at all times, its failure to locate same evidences negligence and lack of due diligence resulting in inexcusable delay).

As we noted in *United States Fire*, 124 Ill. App. 2d at 346, courts have sometimes excused late notice in certain circumstances, such as where the insured did not know of the underlying accident and where the insured reasonably believed it was not liable, no suit would be filed or the accident was not covered by the policy. However, the instant case does not fall within any of these categories. Accordingly, and in line with pertinent case law, we conclude that the City's 2½-year delay in notifying Northern of Sadny's suit is unreasonable and relieves Northern of its duties under the policy to defend and indemnify the City. *Northbrook Property*, 313 Ill. App. 3d at 469 (insured's 17-month delay of notice to insurer unreasonable); *Equity General*, 119 Ill. App. 3d at 237 (insured's nearly five-month delay not "as soon as practicable"); *INA Insurance Co.*, 62 Ill. App. 3d at 83

(City's three-month delay in notifying insurer after suit filed relieved insurer of duties under policy).

## B. Northern is Not Estopped from Asserting its Late-Notice Defense

The City contends that even if its delay in giving notice to Northern was unreasonable, Northern is still liable under the policy because it breached its duty to defend and did not file a timely action for declaratory relief. The City argues that once it notified Northern about the suit on March 30, 1998, Northern unreasonably waited until August 18, 1998, to deny coverage and until February 2, 1999, after the City had settled the suit on January 5, 1999, to file its action for declaratory relief.

■ It is true that when an insurer takes the position that it owes no duty to defend, it may not simply refuse to defend the insured. *Ehlco*, 186 Ill. 2d at 150; see *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991) (insurer is obliged to defend if facts in underlying suit are potentially within policy coverage). Rather, the insurer has two options: (1) defend the suit under a reservation of rights, or (2) seek a timely declaratory judgment that there is no coverage. *Ehlco*, 186 Ill. 2d at 150. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses, including that of late notice. *Ehlco*, 186 Ill. 2d at 150-51. A refusal to defend is justifiable only if it is clear from the face of the underlying suit that its allegations fail to state facts bringing the case within or potentially within policy coverage. *Wilkin*, 144 Ill. 2d at 73. However, the estoppel doctrine applies only when an insurer has breached its duty to defend. *Ehlco*, 186 Ill. 2d at 151. Therefore, if the insurer had no duty to defend or its duty to defend was not properly triggered, estoppel cannot be applied against the insurer. *Ehlco*, 186 Ill. 2d at 151. Such is the case where the insurer was given no opportunity to defend or participate in the underlying suit, where there was no insurance policy in existence, and where, when the policy and the suit's complaint are compared, there clearly was no coverage or potential for coverage. *Ehlco*, 186 Ill. 2d at 151.

■ Reviewing the facts of the instant case in light of these circumstances, it is clear estoppel is inapplicable here. First, as mentioned earlier, the City has yet to provide proof that an insurance policy even exists naming the City as an additional insured in the North Lincoln Avenue construction project. Even though Northern chooses not to address this issue on appeal, it is clear that before it denied coverage in August 1998, Northern had no reason to believe an insurance policy covering the City even existed.

Second, when the City finally sent Northern a copy of Sadny's complaint on March 30, 1998, it was clear on its face that, compared to the policy, the complaint was outside any potential for coverage. The complaint made clear that Sadny's accident occurred on December 8, 1994, and that the City received the summons and complaint on October 11, 1995. It was immediately obvious that almost 2½ years had passed before the City bothered to notify Northern of the suit while the policy clearly required the City to provide notice of this exact type of situation as soon as practicable. Moreover, the City did not even provide Northern with an excuse for its delay and lack of due diligence.

Finally, the City did not give Northern an opportunity to participate in the Sadny suit. From October 11, 1995, to March 30, 1998, the City chose instead to defend the suit on its own. It did not consult Northern regarding any pretrial discourse between it and Sadny or involve Northern in any of its strategy in handling the suit or settlement. And under the insurance policy's provisions, as the City went forward to settle the suit without Northern's consent and after it knew Northern denied coverage, it did so at its own cost. Most significantly, the record is clear that Northern did not simply refuse to defend the City in the Sadny suit. Instead, it did fulfill one of its two options required by law when an insurer refuses to defend its insured: Northern filed a declaratory judgment action on February 2, 1999.

The City argues that Northern filed that action in an untimely fashion, as it requested Northern to provide a defense on March 30, 1998, but Northern waited until August 18, 1998, to deny this request and until February 2, 1999, after the suit was settled, to actually file for declaratory judgment. We disagree.

Northern waited a little more than four months after the City notified it of the suit to deny coverage. Considering that the suit had been ongoing for the last 2½ years and that there was no evidence that a policy even existed covering the City, this four-month period was reasonable. See *Twin City*, 266 Ill. App. 3d at 12 (passage of four months between insured's notice to insurer and insurer's denial of coverage was reasonable, as insurer was conducting investigation regarding insured's lengthy delay of notice and management of underlying suit). Then, after notifying the City on August 18, 1998, that it would not defend or indemnify the City in the Sadny suit, Northern properly assumed that this was the end of the matter. After all, the City did not respond in any way to Northern's decision (let alone to disagree with it) and instead remained silent until January 5, 1999, when it told Northern it had settled the suit. Within 27 days, on February 2, 1999, Northern promptly filed for declaratory judgment. In our view, this was timely.

Northern's duty to defend and indemnify the City under the policy was not properly triggered under these circumstances. Even if it was, Northern filed a timely action for declaratory judgment. Therefore, Northern is not estopped from asserting its late-notice defense.

## C. *Ehlco* is Distinguishable

■ Finally, we note that the City relies heavily on the supreme court decision of *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127 (1999). In that case, two underlying lawsuits arose against an insured regarding an environmental project at two industrial sites. The insured demanded that its insurer defend it but eventually settled the suits on its own. When the insured requested to be indemnified and reimbursed under the insurance policy, the insurer refused to do so for the full amount, asserting a late-notice defense and later filing for declaratory judgment. The court held that the insurer could not assert this defense, as it was barred under the estoppel doctrine because it had not promptly filed its declaratory judgment action. *Ehlco*, 186 Ill. 2d at 161-62.

While at first glance *Ehlco* seems identical to the case at bar, further examination reveals it is critically distinguishable. First, the insured in that case notified the insurer of (at least one of) the suit(s) within 60 days of its filing. This is considerably shorter than the 2½-year delay in the instant case. Moreover, the insured provided the insurer with status updates of the suit constantly throughout the period it faced litigation and continuously asserted that the insurer owed it a defense and coverage. The City in the instant case did not inform Northern of any progress of the suit, except to tell Northern that it had been going on for the last 2½ years. Nor did the City continue to assert that Northern owed it a defense and coverage, as the City remained silent after Northern's August 18, 1998, denial of coverage. The insured in *Ehlco* also informed the insurer that a settlement was offered and allowed the insurer to participate. In the instant case, the City only informed Northern of the settlement after it had already been reached and paid, preventing Northern from participating in its negotiation.

Upon review, these extremely significant differences between *Ehlco* and the instant case make the City's reliance on that case misplaced and unsupportive of its arguments.

## CONCLUSION

In sum, we find that the City's 2½-year delay in notifying Northern of Sadny's suit is plainly unreasonable as a matter of law. Moreover, Northern is not estopped from asserting its late-notice defense. We conclude that Northern has no obligation to provide

defense costs or indemnification to the City under the policy. The $24,000 settlement plus costs and expenses the City paid to Sadny was done so without Northern's consent or participation and, therefore, under the policy, was at the City's own expense. Accordingly, we reverse the judgment of the circuit court of Cook County and grant summary judgment in favor of Northern.

Reversed; summary judgment granted for appellant.

GALLAGHER, P.J., and O'BRIEN, J., concur.