FIFTH DIVISION

June 28, 2002

No. 1-01-0579

EMPLOYERS REINSURANCE CORPORATION, ) 

) 

Plaintiff-Appellant, ) Appeal from the

) Circuit Court of

) Cook County.

) 

E. MILLER INSURANCE AGENCY, INC.; ) 

EDWARD MILLER, SR.; EDWARD MILLER, JR.; ) 

POWER CONSTRUCTION COMPANY; A.J. ) 

MAGGIO COMPANY; NORTHBROOK PROPERTY ) 

AND CASUALTY INSURANCE COMPANY; ) No. 97 CH 7211

COMPOSITE PRODUCTS, INC.; and SECO ) 

CONSTRUCTION COMPANY, INC., ) 

) 

Defendants )

) 

(Power Construction Company, A.J. Maggio ) Honorable

Company, and Northbrook Property & Casualty ) Thomas P. Durkin,

Insurance Company, ) Judge Presiding.

)

Defendants-Appellees). )

JUSTICE GREIMAN delivered the opinion of the court:

This declaratory judgment action was brought to determine the obligations of plaintiff-appellant Employers Reinsurance Corporation (ERC) to defend or pay defense costs and indemnification to its insureds, defendants E. Miller Insurance Agency, Inc. (Miller Agency), Edward Miller, Jr. (Miller Jr.) and Edward Miller, Sr. (Miller Sr.) (together referred to as the Miller defendants or the insureds) under a claims made, errors and omissions policy issued to the Miller Agency for the allegations directed against them in an underlying lawsuit.  The trial court granted judgment in favor of defendants-appellees Northbrook Property & Casualty Insurance Company (Northbrook Property), A.J. Maggio Company (A.J. Maggio) and Power Construction Company (Power Construction) (together referred to as the Northbrook defendants).  The trial court denied ERC's motion for reconsideration and, alternatively, its motion for leave to file an amended complaint.  ERC appeals from the judgment on the pleadings in favor of the Northbrook defendants.  For the following reasons, we reverse and grant summary judgment in favor of ERC.

This case arises from the defense and indemnification of Power Construction and A.J. Maggio in three separate lawsuits.  Prior to those suits, Northbrook Property, as a 
bona fide
 subrogee for Power Construction and A.J. Maggio, along with Power Construction and A.J. Maggio themselves, asserted that the Miller Agency issued certificates of insurance to Power Construction and A.J. Maggio.  Allegedly, those certificates of insurance named both Power Construction and A.J. Maggio as additional insureds under two general liability insurance policies issued by Scottsdale Insurance Company (Scottsdale) and Houston General Insurance Company (Houston General) to third party Composite Products.  Composite Products was a subcontractor on two separate jobs in which Power Construction and A.J. Maggio were involved.  According to Power Construction, A.J. Maggio and Northbrook Property, Scottsdale allegedly was insuring Power Construction and Houston General allegedly was insuring A.J. Maggio.

However, after Power Construction and A.J. Maggio were sued, Scottsdale and Houston General denied coverage, claiming that Power Construction and A.J. Maggio were never added as additional insureds on Composite Products' policies.  Specifically, Scottsdale claimed that the Miller Agency was not an authorized agent and had no authority to bind coverage, and Houston General claimed that no policy existed for the dates alleged.  Thus, there could be no additional insured coverage for either Power Construction or A.J. Maggio.  As a result of those denials, Northbrook Property, as the general liability insurer of Power Construction and A.J. Maggio, carried the full cost of defending and indemnifying its insureds in those cases.

In December of 1995, Power Construction, A.J. Maggio and Northbrook Property sued the Miller Agency and Miller Jr. for consumer fraud, breach of fiduciary duties and breach of contract.  Miller Sr. was later charged pursuant to an amended complaint.  That complaint specifically alleged that, but for certain acts and omissions committed by all of the Miller defendants, Northbrook Property would not have incurred defense and indemnification costs for its insureds, Power Construction and A.J. Maggio, because they would have been defended and indemnified by Scottsdale and Houston General as additional insureds under Composite Products' policies.  

The Miller Agency was served on January 16, 1996, Miller Jr. was served on September 16, 1996, and Miller Sr. was served on November 1, 1996.  However, none of the Miller defendants forwarded a copy of the summons or the complaint to their professional liability, errors and omissions provider, ERC.  In fact, on March 13, 1996, approximately two months after the Miller Agency was served, the Northbrook defendants actually supplied ERC with those copies.

Upon receiving a copy of the summons and complaint, ERC opened a claim file and began an investigation of the charges set forth against the Miller defendants.  Its investigation began with a request to the Miller Agency and Miller Jr. for their version of the handling of the Composite Products account and for copies of documents regarding the account.  On April 3, 1996, ERC again wrote to the Miller Agency and advised that it was investigating the charges set forth in the underlying complaint under a reservation of rights based upon the Miller defendants' failure to give prompt notice of the underlying complaint, as required by ERC's policy.  ERC also requested information regarding the defensive measures the Miller defendants had taken in response to their being served with the underlying complaint. 

As of May 13, 1996, nearly two months since ERC heard of the underlying complaint, ERC still had received no information from its insureds.  Accordingly, on that date, ERC telephoned Miller Jr. to obtain documentation and information.  Miller Jr. assured ERC that Miller Sr. would respond.  Having received no response from Miller Sr. by May 23, 1996, ERC again wrote to Miller Jr. and the Miller Agency to request information.  In that letter, ERC advised the Miller Agency that it had not assumed its defense and that a default judgment could be sought.  ERC  then stated that if it was not contacted by June 1, 1996, with information, it would deny coverage for breach of the cooperation provision in its policy.  None of the Miller defendants responded.

On June 10, 1996, in accord with its previous warnings, ERC denied coverage to the Miller Agency based upon its failure to cooperate with the investigation.  Again, the insureds did not respond.  On November 16, 1996, nearly two months after Miller Sr. was served, the insurance agent for the Miller Agency, Swett and Crawford, sent ERC a copy of the amended complaint.  On November 26, 1996, ERC wrote to Swett and Crawford to acknowledge receipt of the underlying complaint and to advise that it was denying coverage and would not be taking any further action on the matter.  The insureds did not respond to the denial.

According to ERC, the next time that it heard about the underlying litigation was on March 3, 1997, when the Northbrook defendants' attorney advised ERC that default orders had been entered against the Miller defendants.  On that day, the Northbrook defendants' attorney wrote to Miller Sr. to inform him that on February 4, 1997, a default order had been entered against him.  In that letter, the Northbrook defendants' attorney advised that he intended to prove up money damages, have judgment personally entered against Miller Sr., and seek to satisfy that judgment from his personal assets.  A copy of the order of default was attached to that letter.

On that same date, the Northbrook defendants' attorney also wrote the Miller Agency, advising that a default order had been entered against it on October 1, 1996, that he intended to prove up money damages and have a judgment entered against the Agency and would seek to satisfy that judgment with the Agency's assets.  A copy of the default order was also attached to that letter.  The Northbrook defendants' attorney also notified ERC that default orders were entered against the insureds and that it intended to prove up the default orders and collect against ERC through a garnishment proceeding.

On March 6 and 10, 1997, following their receipt of the default orders, the Miller defendants contacted ERC for the first time.  ERC responded on March 17, 1997, by reminding them that on June 10, 1996, coverage was denied based upon breach of the late notice and cooperation provisions, and that it had restated its denial on November 26, 1996.  ERC also reminded them that it acknowledged the underlying complaint under a reservation of rights because of the apparent breaches of notice and cooperation provisions.  In closing, ERC again restated its denial.

On June 10, 1997, ERC filed a complaint for declaratory judgment against the Miller defendants and the Northbrook defendants for a determination of its coverage obligations to the insureds for the underlying litigation.  Specifically, ERC sought a finding that it had no obligation to pay defense costs or indemnify the insureds both prior to and during the litigation because the insureds had breached the prompt notice (count I) and cooperation (count II) provisions of ERC's policy.  It also claimed to be free of defense obligations based on a criminal acts exclusion (count III) and a fraudulent acts exclusion (count IV) in the policy, and that it owed no obligations prior to tender (count V).  On November 25, 1997, the ERC filed its first amended complaint for declaratory judgment, essentially realleging the allegations in its first complaint.  The relevant portions of ERC's contract with the Miller defendants read as follows:

"DEFENSE AND SETTLEMENTS.  The Corporation, in the Insured's name and behalf, shall have the right to investigate, defend, and conduct settlement negotiations in any claim or suit ***.

***

DEFENSE EXPENSES AND SUPPLEMENTARY PAYMENTS.  With respect to such insurance as is afforded by the policy, the Corporation shall pay, in addition to the applicable limit of liability, provided the limit of liability had not been exhausted:

(a) All expenses incurred in the defense of any claim or suit against the Insured alleging such negligent act, error or omission, and seeking damages on account thereof, even if such claim or suit is groundless, false, fraudulent, or for an amount less than the Insured's deductible ***.

***

NOTICE.  The Insured shall give prompt notice to the Corporation of:

(a) Any claim made and of any action or suit commenced against  the Insured, and

(b) Any proceeding, event, or development which in the judgment of the Insured might result in a claim against the Insured;

and shall forward promptly to the Corporation copies of such pleadings and reports as may be requested by the Corporation.  

***

The Insured shall cooperate with the Corporation, and upon the Corporation's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

On May 10, 2000, the Northbrook defendants moved for judgment on the pleadings, asserting that ERC's failure to either defend its insureds or file a timely declaratory judgment left the insureds without a defense and caused default orders to be entered against them.  Thus, they argued that ERC must be estopped from raising policy defenses.

In response, ERC asserted that estoppel was inapplicable because it could only be imposed as a sanction where an insurer has
 a contractual duty to defend and the insurer breaches that duty.  In the present case, it claimed, there was no "duty to defend" clause in its policy with the Miller defendants, only a "
right
 to defend" clause (emphasis added).  Accordingly, it concluded, there was simply nothing that ERC could have breached.  Moreover, ERC argued that its declaratory judgment was timely because it was filed prior to final judgment or settlement of the three underlying actions.

In reply, the Northbrook defendants claimed that because ERC never pled that it had no duty to defend, the allegations of ERC's complaint were
 incompatible with its argument in response to the Northbrook defendants's motion on the pleadings.  Second, they claimed that a duty to pay defense costs is identical to a duty to defend.  Lastly, they claimed that ERC's complaint was untimely as a matter of law because default judgments were entered against the insureds in the underlying litigation prior to ERC filing its complaint.

The trial court granted the Northbrook defendants' motion and made two rulings.  First, it held that ERC was estopped from asserting coverage defenses because it did not defend the insureds after receiving notice of the underlying litigation from the Northbrook defendants' attorney.  Second, it found that ERC's declaratory judgment action was untimely as a matter of law because it was filed nearly 15 months after notice of the underlying litigation.

ERC filed a timely motion for reconsideration and, alternatively, a motion for leave to file an amended complaint.  In the motion for reconsideration, ERC reiterated its argument that estoppel was inappropriate because it is based upon a breach of a duty to defend.  Then, ERC noted that its amended complaint, which was incorporated with and attached to its policy with the Miller defendants, does not support a finding that ERC had a duty to defend and, therefore, cannot support a finding that ERC was in breach.  It also argued that "[a] finding of estoppel has the effect of creating duties beyond the obligations of the policy" where that finding "transforms the defense costs obligation into a duty to defend obligation."  ERC then reiterated its argument that its declaratory judgment was timely because it was filed prior to final judgment or settlement of the three underlying actions.

The trial court denied ERC's motion for reconsideration and its motion for leave to file an amended complaint.  It reasoned that because ERC did not plead that it had no duty to defend and because it did not defend, it had breached its duty to defend.  Essentially, the court felt that ERC was trying to correct a pleading defect or deficiency with its motion to file an amended complaint. Thus, the court held, estoppel was proper.  Lastly, the court again rejected ERC's argument on the timeliness of its declaratory judgment action.  ERC's appeal followed. 

In 
Board of Trustees of the University of Illinois v. City of Chicago
, 317 Ill. App. 3d 569 (2000), this court recently recited the appropriate standard of review for a judgment on the pleadings:

" ‛A motion for judgment on the pleadings tests the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought by his complaint or, alternatively, whether the defendant by his answer has set up a defense which would entitle him to a hearing on the merits.'   
Village of Worth v. Hahn,
 206 Ill. App. 3d 987, 990, 565 N.E.2d 166 (1990).  The motion requires the trial court to examine the pleadings and determine whether there is an issue of fact or whether the controversy can be resolved as a matter of law.  
Village of Worth
, 206 Ill. App. 3d at 990.  On appeal, the reviewing court must ascertain whether the trial court correctly determined that the pleadings presented no issue of material fact and, if there were no such issue, whether the court correctly entered the judgment.  
TDC Development Corp. v. First Federal Savings & Loan Ass'n
, 204 Ill. App. 3d 170, 174, 561 N.E.2d 1142 (1990).  The appropriate standard of review is 
de novo
.  
Massachusetts Bay Insurance Co. v. Unique Presort Services, Inc.
, 287 Ill. App. 3d 741, 744, 679 N.E.2d 476 (1997)."  
Board of Trustees
, 317 Ill. App. 3d at 571.

 For its first point, ERC again argues that the trial court's finding of estoppel is unsupported by the pleadings because its contract with the Miller defendants does not include a duty to defend.  As such, it argues, it could not have breached a nonexistent duty.  It notes that the supreme court outlined the applicability of the estoppel doctrine in 
Employers Insurance of Wausau v. Ehlco Liquidating Trust
, 186 Ill. 2d 127 (1999):

"This estoppel doctrine applies only where an insurer has breached its duty to defend.  Thus, a court inquires whether the insurer had a duty to defend and whether it breached that duty.  See 
Clemmons[ v. Travelers Insurance Co.
], 88 Ill. 2d [469, 475-78 (1981)] (determining first that the insurer had a duty to defend, and then finding that the insurer had renounced that duty).  Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered."  
Ehlco
, 186 Ill. 2d at 151.

In the present case, ERC argues that the contract clearly states that it had a 
right
 to defend its insureds rather than a duty to defend them.  And while it concedes that neither of its complaints contained an independent count that sought a declaration of that averment, it claims that such an inclusion would have been "surplusage."  By attaching a copy of the contract as an exhibit to its amended complaint, it argues, the language of the policy was incorporated into the complaint.  For this, it notes that exhibits attached to motions for judgment on the pleadings are considered part of the pleadings for all purposes where the pleading is founded on such exhibit.  See 
In re Estate of Davis
, 225 Ill. App. 3d 998 (1992).  In fact, it claims, where the allegations in a pleading conflict with the facts disclosed in an exhibit, the exhibit controls.  See 
Sharkey v. Snow
, 13 Ill. App. 3d 448 (1973); 
McCormick v. McCormick
, 118 Ill. App. 3d 455 (1983). Accordingly, where the language of the complaint–via the contract–clearly states that ERC only has a right to defend, and mentions nothing about its duty to defend, the trial court erred in finding a breach of a nonexistent duty.

The Northbrook defendants correctly respond that this court has recognized the need for an insurer to plead all of its coverage defenses in its complaint.  For example, in 
Continental Insurance Co. v. Skidmore, Owings & Merrill
, 271 Ill. App. 3d 692 (1995), Continental filed a complaint for declaratory judgment alleging that two policy exclusions negated coverage.  Continental obtained judgment in the trial court, but lost on appeal.  On remand, Continental sought leave to file a second amended complaint alleging that additional policy exclusions applied.  
Continental
, 271 Ill. App. 3d at 694-95.  This court held that the law of the case prevented Continental from litigating any new policy exclusions.  The court stated:  "Considering that the entire matter of the applicability of policy exclusions was up on appeal, plaintiff had the obligation to present all exclusions in one setting."  
Continental
, 271 Ill. App. 3d at 697.

Moreover, in 
Pleasure Driveway & Park District of Peoria v. Aetna Casualty & Surety Co.
, 80 Ill. App. 3d 1093 (1980), the plaintiff filed a complaint for declaratory judgment to determine Aetna's liability to provide a defense in litigation.  In its complaint, the plaintiff alleged that Aetna owed it a defense for a counterclaim.  In response to a bill of particulars, the plaintiff stated that there was coverage for the counterclaim and two other cases.  This court stated that since the complaint did not allege that Aetna owed a duty to defend any claims other than the counterclaim, the allegations contained in other suits were not relevant and would not be considered.  
Pleasure Driveway
, 80 Ill. App. 3d at 1095. 

Certainly, this court has recognized the ability of insurance companies to reserve a duty to indemnify their clients as opposed to a duty to defend them.  "In Illinois, an insurer's duty to defend is separate and distinct from its duty to indemnify, with the duty to defend being broader than the duty to indemnify."  
Guillen v. Potomac Insurance Co. of Illinois
, 323 Ill. App. 3d 121, 126 (2001), citing 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 125 (1992).  See also 
La Grange Memorial Hospital v. St. Paul Insurance Co.
, 317 Ill. App. 3d 863, 869-70 (2000) (the duty to defend turns on whether the insured's claim was potentially within the scope of coverage; the duty to indemnify turns on whether the claim actually came within the policy).  

Accordingly, it is possible that ERC never explicitly contracted to have a duty to defend its insureds and only reserved the right to defend them.  However, ERC simply never raised this issue in the pleadings of its declaratory judgment action.  As such, we find that the Northbrook defendants are correct in arguing that ERC was required to include its "right to defend" coverage defense in its complaint, and that its failure to do so is fatal to that claim.  ERC's awareness of that shortcoming seems evident in its request to file an amended complaint alleging the "right to defend" argument.  Equally unavailing is ERC's attempt to avoid that deficiency by arguing that since its policy was attached to the complaint as an exhibit, the policy controls and is a substitute for that pleading.  As the Northbrook defendants point out, under such an argument, an insurer could file a complaint for declaratory judgment, attach the policy, and then allege one policy exclusion.  The insurer would then move for summary judgment, relying on different provisions in the policy to deny coverage.  Such an interpretation was certainly not envisioned in 
Davis
, 
Sharkey
 or the 
McCormick
 decision, where exhibits were used to correct factually inaccurate or vague pleadings, not as a substitute for them.

However, while the trial court may have been correct in determining that ERC could not use its "right to defend" coverage defense to rebut the Northbrook defendants' argument that ERC never asserted that it had no duty to defend in its pleadings, it appears that there are other coverage defenses in ERC's complaint that do assert that it has been 
relieved
 of its duty to defend.  In a few scattered instances in its brief on appeal, ERC notes that its complaint sought "a declaration that [it] had no obligation to provide a defense under the Policy to the Agency, Miller Sr. or Miller Jr. in connection with the [underlying litigation] or the claims made therein" for breach of the duty to give prompt notice and breach of the duty to cooperate (counts I and II).

In 
Northern Insurance Co. of New York v. City of Chicago
, 325 Ill. App. 3d 1086 (2001), we discussed the duty of the insured to give prompt notice:

"The insurance contract controls the insured's duties.  
Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.
, 313 Ill. App. 3d 457, 464 (2000).  When such a contract includes a provision requiring the insured to notify the insurer of a suit against it, this provision is not just a technical requirement but a ‛condition precedent to the triggering of the insurer's contractual duties.' 
Northbrook Property
, 313 Ill. App. 3d at 464.  When the insured fails to comply with this provision to give notice, the insurer may be relieved from its duty to defend and indemnify the insured under the policy.  
Northbrook Property
, 313 Ill. App. 3d at 464;  
INA Insurance Co. of Illinois v. City of Chicago
, 62 Ill. App. 3d 80, 83 (1978)."  
Northern Insurance
, 325 Ill. App. 3d at 1091.

In 
Northern Insurance
, for example, the notice provision of the claims made policy called for the city to notify Northern of any suit "as soon as practicable."  

In 
Barrington Consolidated High School v. American Insurance Co.
, 58 Ill. 2d 278, 281 (1974), the supreme court noted, "[p]rovisions in policies stating when the insurer must be notified of a covered occurrence have generally been interpreted to require notification of the company within a reasonable time, considering all the facts and circumstances of the particular case."  
Accordingly, "[t]he insured is expected to act with due diligence when its policy requires it to give notice of a suit to the insurer.  
Northbrook Property
, 313 Ill. App. 3d at 465.  And while the timeliness of the notice is generally a question of fact, this issue can be resolved as a matter of law where *** no material facts are in dispute.  
Twin City[ Fire Insurance Co. v. Old World Trading Co.
], 266 Ill. App. 3d [1, 7 (1993)]; 
INA Insurance Co.
, 62 Ill. App. 3d at 83."  
Northern Insurance
, 325 Ill. App. 3d at 1091.  As to what constitutes a "reasonable time," we have stated:

"An insured who knows a suit against it exists but allows a considerable length of time to pass before notifying the insurer does not automatically lose coverage under the insurance policy, even one which includes the ‛as soon as practicable' provision.  
Northbrook Property
, 313 Ill. App. 3d at 465.  This is true, however, only if the insured's delay in notifying the insurer is justifiable. 
Northbrook Property
, 313 Ill. App. 3d at 466 (absent valid excuse, ‛the insured's failure to satisfy the notice requirement will generally absolve the insurer of its duties under the policy').  To determine this, we evaluate several factors, including the language of the notice provision, the insured's sophistication in commerce and insurance matters, its awareness that a suit was pending and once aware, its diligence in ascertaining whether policy coverage is available.  
Northbrook Property
, 313 Ill. App. 3d at 466."  
Northern Insurance
, 325 Ill. App. 3d at 1092.

With regard to cooperation clauses, the supreme court has noted:

"Any condition in the policy requiring cooperation on the part of the insured is one of great importance (
Schneider v. Autoist Mutual Insurance Co.
 (1931), 346 Ill. 137, 139), and its purpose should be observed (
M.F.A. Mutual Insurance Co. v. Cheek 
 (1977), 66 Ill. 2d 492, 496).  The basic purpose of a cooperation clause is to protect the insurer's interests and to prevent collusion between the insured and the injured party.  (See 
M.F.A. Mutual Insurance Co.
, 66 Ill. 2d at 496; 
Pittway Corp. v. American Motorists Insurance Co.
 (1977), 56 Ill. App. 3d 338;  8 J. Appleman, Insurance Law & Practice §4771, at 213 (West 1981).)  Additionally, the very principles of law which govern contracts generally apply with equal force to contracts of insurance.  (
Zitnik v. Burik
 (1946), 395 Ill. 182, 186.)  Finally, where the provisions of the policy are clear and unambiguous, it is the duty of the court to enforce them according to their plain meaning.  
Thornton v. Illinois Founders Insurance Co.
 (1981), 84 Ill. 2d 365, 371."  
Waste Management, Inc. v. International Surplus Lines Insurance Co.
, 144 Ill. 2d 178, 191-92 (1991).

The 
Waste Management
 court found that the cooperation clause imposed upon the insureds "the duty to assist insurers in the conduct of suits and in enforcing any right to contribution or indemnity against persons potentially liable to insureds."  
Waste Management
, 144 Ill. 2d at 192.  Further, the policy stated that insurers are entitled to conduct any claim, in the name of insureds, for indemnity or damages against persons, and that insureds "shall give all such information and assistance as the insurers may reasonably require."  
Waste Management
, 144 Ill. 2d at 192.  The court held:

"[T]he cooperation clause imposes a broad duty of cooperation and is without limitation or qualification.  It represents the contractual obligations imposed upon and accepted by insureds at the time they entered into the agreement with insurers.  In light of the plain language of the cooperation clause in particular, and language in the policy as a whole, it cannot seriously be contended that insureds would not be required to disclose contents of any communications they had with defense counsel representing them on a claim for which insurers had the ultimate duty to satisfy." 
Waste Management
, 144 Ill. 2d at 192.

In the present case, the Miller defendants, as the insureds, are also controlled by the provisions in the insurance policy with ERC.  As noted above, the notice provision calls for them to give "prompt notice," and the cooperation clause calls for them to "assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."  As in both 
Northern Insurance
 and 
Waste Management
, these are conditions that must be fulfilled before the Miller defendants can benefit from ERC's duty to defend and indemnify them.  Accordingly, in a situation where either of these conditions is not met, ERC would not be estopped from asserting coverage defenses where, ultimately, it would have been relieved of its duties.

The facts of this case, as in 
Northern Insurance
, are undisputed.  In December of 1995, the Northbrook defendants sued the Miller defendants for consumer fraud, breach of fiduciary duties and breach of contract.  The Miller Agency was served with a complaint and summons on January 16, 1996.  Accordingly, by January 16, 1996, the Miller Agency, through Miller Jr. and Miller Sr., knew that it had been sued in the circuit court.  The Miller defendants, however, failed to give notice until March 6 and 10, 1997, almost 14 months later.  And at no time did the Miller defendants ever tender the original complaint or the claims made therein to ERC for coverage, defense, or indemnity.  Nevertheless, ERC received notice of the Northbrook defendants' suit from the Northbrook defendants' counsel on March 22, 1996.

Under the supreme court's holding in 
Cincinnati Cos. v. West American Insurance Co.
, 183 Ill. 2d 317 (1998), this would constitute "actual notice" to ERC.  Previously, we have defined actual notice:

"An insurer has ‛actual notice' where it knows both ‛ "that a cause of action has been filed and that the complaint falls within or 
potentially
 within the scope of the coverage of one of its policies."  [Citation.]'  (Emphasis added.)  
Employers Insurance v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 143, 708 N.E.2d 1122, 1131 (1999).  ‛Actual notice' exists where the insurer receives notice ‛from 
any
 
source
 sufficient to permit the insurer to locate and defend its insured.'  (Emphasis added.)  
Insurance Co. v. Federal Kemper Insurance Co.
, 291 Ill. App. 3d 384, 388, 683 N.E.2d 947 (1997)."  
La Grange
, 317 Ill. App. 3d at 871.   

Moreover, the supreme court has held that actual notice of a claim triggers the insurer's duty to defend.  
Cincinnati
, 183 Ill. 2d at 328.  

Accordingly, regardless of whether there is a tender of the defense by the insured, an insurer's actual notice of a potential suit, within a reasonable time, is sufficient to satisfy the insured's duty to give prompt notice.  See 
Illinois Founders Insurance Co. v. Barnett
, 304 Ill. App. 3d 602, 607-08 (1999).  Here, therefore, the Northbrook defendants' tender of notice to ERC of the underlying suit was sufficient to satisfy the Miller defendants' duty to give prompt notice and to trigger ERC's duty to defend.
(footnote: 1)
 However, the Miller defendants still had to comply with ERC's cooperation clause.  We note that once ERC began its investigation of the claims made in that suit under a reservation of rights, the Miller defendants neither answered nor supplied anything in response to ERC's requests for information and documentation.  In fact, in a telephone conversation on May 13, 1996, ERC advised the Miller Agency that it had not received the requested information.  That conversation was confirmed in a May 26, 1996, letter which requested that the Miller Agency give immediate attention to that matter. 

As was the case in 
Waste Management
, this cooperation clause "imposes a broad duty of cooperation and is without limitation or qualification."  
Waste Management
, 144 Ill. 2d at 192.  It also "represents the contractual obligations imposed upon and accepted by insureds at the time they entered into the agreement with insurers."  
Waste Management
, 144 Ill. 2d at 192.  Accordingly, in light of the plain language of the cooperation clause, it cannot seriously be contended that the Miller defendants would not be required to disclose any information and documentation concerning the Northbrook defendants' suit against the Miller defendants, which was a claim that we presume ERC had a duty to satisfy.  Consequently, we find that ERC is excused from its duties because of the Miller defendants' breach of their duty to cooperate.  Accordingly, we find that ERC should not have been estopped from asserting coverage defenses where, ultimately, it would have been discharged of its duties.

Next, ERC addresses the trial court's contention that it was untimely in filing its declaratory judgment action.  As noted in 
Ehlco
, an insurer with a duty to defend is required to either defend its insureds under a reservation of rights or timely file a declaratory judgment action.  
Ehlco
, 186 Ill. 2d at 150; see also 
United States Fidelity & Guarantee Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 73 (1991) (insurer is obliged to defend if facts in underlying suit are potentially within coverage).  Here, because ERC never defended the Miller defendants and because it filed its declaratory judgment action nearly 15 months after receiving notice of the underlying complaint, the Northbrook defendants claim that ERC did neither.

Again, language from 
Northern Insurance
 is on point:

"If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses, including that of late notice.  
Ehlco
, 186 Ill. 2d at 150-51.  A refusal to defend is justifiable only if it is clear from the face of the underlying suit that its allegations fail to state facts bringing the case within or potentially within policy coverage.  
Wilkin
, 144 Ill. 2d at 73.  However, the estoppel doctrine applies only when an insurer has breached its duty to defend.  
Ehlco
, 186 Ill. 2d at 151.  Therefore, if the insurer had no duty to defend or its duty to defend was not properly triggered, estoppel cannot be applied against the insurer.  
Ehlco
, 186 Ill. 2d at 151.  Such is the case where the insurer was given no opportunity to defend or participate in the underlying suit, where there was no insurance policy in existence, and where, when the policy and the suit's complaint are compared, there clearly was no coverage or potential for coverage.  
Ehlco
, 186 Ill. 2d at 151."  
Northern Insurance
, 325 Ill. App. 3d at 1094.

This language expanded on the notion outlined in 
Cincinnati
 that "[i]f the insured indicates that it does not want the insurer's assistance, or is unresponsive or uncooperative, the insurer is relieved of its duty to defend. [Citation.]" 
Cincinnati
, 183 Ill. 2d at 326. 

Here, the Miller defendants never even gave ERC an opportunity to participate in the Northbrook defendants' suit.  Indeed, from January 16, 1996, until March 6, 1997 –after the insureds' receipt of the default orders– the Miller defendants were entirely inactive in the case.  Further, they never responded to ERC's persistent attempts to retrieve information regarding the defense of the Miller defendants.  This, as we have held, mandates that the estoppel doctrine cannot be applied against ERC.  

However, even if estoppel still could be applied, the record is clear that ERC did not simply refuse to defend the Miller defendants in the Northbrook defendants' suit.  Instead, like the plaintiff in 
Northern Insurance
, ERC fulfilled one of its two options required by law when an insurer refuses to defend its insured: it filed a declaratory judgment action on June 10, 1997.

As indicated, the Northbrook defendants contend that the trial court correctly found that ERC's declaratory judgment action was untimely because it was filed 15 months after ERC received  notice of the Northbrook defendants' complaint.  We disagree.  ERC waited 
one
 
week
 after the Miller defendants notified it of the litigation to remind them that it previously had denied coverage.  In light of the fact that the case had been proceeding for nearly 14 months and that ERC had twice reminded the Miller defendants of its intent to deny coverage, this one week was reasonable.  Then, on June 10, 1997, less than three months after its second reaffirmation of its denial of coverage, ERC filed its declaratory judgment action.  Moreover, the underlying litigation remains unresolved by final judgment or settlement.  In our opinion, under the two-prong timeliness test in 
Ehlco
, this was timely.  See 
Ehlco
, 186 Ill. 2d at 157 (in determining whether a declaratory judgment action was timely, the court gave consideration to (1) the time period from the date of the insurer's notice of the lawsuit to the date the declaratory judgment action was filed and (2) whether the underlying action was resolved by final judgment or settlement).

In their affirmative duty under the Rules of Professional Conduct to cite to this court adverse precedent (134 Ill. 2d R. 3.3(a)(3)), the Northbrook defendants reference the opinion of 
Pekin Insurance Co. v. Allstate Insurance Co.
, No. 1-01-1594 (March 29, 2002), in their motion to cite additional authority
.  
Pekin
 suggests, contrary to the Northbrook defendants' position on appeal, that an insurer is not estopped to deny coverage where the insurer files a declaratory judgment action prior to the date the underlying case was resolved.  
Pekin
, slip op. at 5-6.  For this, 
Pekin
 relies upon the supreme court's language in 
State Farm Fire & Casualty Co. v. Martin
, 186 Ill. 2d 367 (1999), that "[a]n insurer will not be estopped from denying coverage merely because the underlying case proceeds to judgment before the declaratory judgment action is resolved."  
State Farm
, 186 Ill. 2d at 374.  While we do not rely on 
Pekin
 in reaching our result today, we believe that 
Pekin
 has overstated the supreme court's holding in 
State Farm
.  

 In 
State Farm
, the court was dealing with a situation where the underlying tort action proceeded to judgment before the declaratory judgment action was resolved, but not before the declaratory judgment action was brought. 
 The court
 held that an insurer will not be estopped from denying coverage 
only
 because the underlying case proceeded to judgment before the declaratory judgment action was resolved.  
State Farm
, 186 Ill. 2d at 374.  Put another way, the court held that the simple fact that the insured's underlying case went to judgment, by itself, would not be a bar for an insurer to proceed with its declaratory judgment action which had been filed but not resolved.  

However, the court did not hold, and we do not take it to mean, that an insurer may file its declaratory judgment action at 
any
 time prior to the conclusion of the underlying litigation before estoppel applies.  Such a holding, we think, does not properly account for an insurer's punctuality in filing its declaratory judgment action in a reasonable time from the date of the insurer's notice of the lawsuit.  In other words, we think that the court in 
Pekin
 effectively is disregarding a second factor that is still very real and alive in determining the timeliness of a declaratory judgment.  This much we can glean from 
Ehlco
, where the court, in determining the timeliness of a declaratory judgment action, considered the time period between the insurer's notice of the underlying suit and when it filed its declaratory judgment action.  
Ehlco
, 186 Ill. 2d at 157.  To hold otherwise would be to find that estoppel will never apply to an insurer as long as it eventually gets to court before the conclusion of the underlying case.  This, we think, is not the principle the supreme court intended in 
State Farm
.

On a final note, a question has been raised as to whether we should remand this case so that the trial court could consider ERC's claim that it only had an indemnification policy with the Miller defendants and, in turn, the amount which ERC has to indemnify the Miller defendants.  As we have held, regardless of whether ERC's policy is construed as a duty to defend policy or a duty to indemnify policy, the fact remains that the Miller defendants relieved ERC of 
any
 duty when they breached the cooperation clause.  As it stands, there are no facts in controversy and, thus, no need for a remand.

Because ERC did not plead its "right to defend" defense in its complaint, it may not now rely upon that defense.  However, because ERC was released from its duty to defend and indemnify the Miller defendants due to the Miller defendants' breach of their duty to cooperate, we reverse the trial court's finding that ERC is estopped from asserting its coverage defenses.  In any event, because ERC has no obligation to provide a defense or indemnification to the Miller defendants, we find that, under the circumstances, ERC timely filed its declaratory judgment action.  Accordingly, we grant summary judgment in favor of ERC.

Reversed; summary judgment granted for appellant.

QUINN and REID, JJ., concur.

FOOTNOTES
1:  As noted above, because ERC never pled its "no duty" argument in its declaratory action, we cannot consider it and must proceed on the presumption that ERC assumed a duty to defend its insureds in its policy.