GREAT AMERICAN INSURANCE COMPANY, Plaintiff-Appellant, v. WEST BEND MUTUAL INSURANCE COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 1—98—2023

Opinion filed January 18, 2000.

Querrey & Harrow, Ltd., of Chicago (John E. DeLascio, Julie L. Trester, and Bruce H. Schoumacher, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Samuel A. Purves, and Kristin L. Dvorsky, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

This case involves construction of an insurance policy. Plaintiff, Great American Insurance Company, and defendant, West Bend Mutual Insurance Company, both issued policies insuring Sundance Homes, Inc., against some forms of liability that might arise from construction work. A worker injured during construction sued Sundance for violation of the Structural Work Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*). Great American settled with the worker then brought this lawsuit against West Bend, seeking to recover part of the amount it paid in settlement of the worker's claim. The trial court granted West Bend summary judgment. Great American appeals.

In 1988 Sundance, a general contractor, subcontracted with Lenny Szarek, Inc., for carpentry work on a homebuilding project in Streamwood, Illinois. In the subcontract Szarek promised to purchase

comprehensive general liability insurance naming Sundance as an additional insured. Szarek purchased that insurance from West Bend. The policy provided:

"It is agreed that [Sundance] is added to this policy as an additional insured. That entity shall be covered for all liabilities for bodily injury, property damage or death that are imputed to it as a result of the actions or conduct of [Szarek]. ***

This endorsement provides no coverage to the additional insured for liabilities arising out of the claimed negligence of the additional insured, or out of negligence of parties other than [Szarek]."

Szarek also purchased worker's compensation insurance from Casualty Insurance Company.

In February 1989 Rondal Bass suffered injuries while working as Szarek's employee. Casualty paid Bass $165,239.15 in worker's compensation. Bass sued Sundance, alleging that it violated the Act by failing to ensure that walls and trusses had adequate bracing. Sundance asked both insurers to defend. Upon reviewing the complaint, West Bend declined on grounds that liability under the Act could not qualify as liability "imputed to [Sundance] as a result of the actions or conduct of [Szarek]."

West Bend sued for a declaration of the rights of the parties under the insurance contract. The trial court found West Bend had a duty to defend. On appeal we affirmed, finding the allegations of Bass' complaint sufficient to "give[ ] rise to the possibility of a recovery under the policy." *West Bend Mutual Insurance Co. v. Sundance Homes, Inc.*, 238 Ill. App. 3d 335, 337, 606 N.E.2d 326 (1992). We further found West Bend's interpretation of the liabilities " 'imputed *** as a result of' " Szarek's conduct to be " 'strained and narrow.' " *West Bend*, 238 Ill. App. 3d at 337-38. Pursuant to our decision, West Bend and Great American shared the costs of defense.

In 1994 Great American and Bass settled the lawsuit. Casualty accepted $40,000 in exchange for the release of its worker's compensation lien on the recovery. But West Bend refused to split the settlement.

Great American sued for a judgment declaring the rights of the parties under West Bend's policy. In the complaint Great American alleged that it sent West Bend copies of statements given by witnesses to the accident, in which the witnesses allegedly said that an employee of Szarek removed a brace supporting the structure on which Bass stood, and the removal of that brace caused Bass to fall. West Bend admitted that Great American sent statements from witnesses but denied the substance of the alleged statements. West Bend also answered that Great American did not accurately summarize the state-

ments. Great American provided only transcripts of interviews with the unsworn witnesses, not depositions or affidavits.

West Bend admitted the essential allegations of the complaint and stipulated that Great American paid a fair amount for the settlement. Then West Bend moved for summary judgment, arguing that it owed no part of the settlement because liability under the Act could not qualify as liability imputed to Sundance as a result of Szarek's conduct.

The trial court agreed and added that the cause of the accident remained undetermined. Nonetheless, the court held that "[t]he money Great American paid in settlement arose solely from the conduct of its insured[,] Sundance." The trial court granted West Bend's motion for summary judgment.

■ This court reviews summary judgments *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). We accord the terms of an insurance policy their plain meanings, and we construe limitations on coverage strongly against the insurer. *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116, 122, 632 N.E.2d 1039 (1994). "[C]ourts should be quick to construe the policy in favor of coverage so that the insured is not deprived of a benefit for which the insured paid." *Dash Messenger Service, Inc. v. Hartford Insurance Co.*, 221 Ill. App. 3d 1007, 1010, 582 N.E.2d 1257 (1991).

■ Great American pled that Szarek's employees negligently removed the bracing, causing Bass to fall. West Bend does not dispute the adequacy of the allegations to show that Sundance's liability arose "as a result of" the acts of Szarek, within the meaning of the insurance policy. West Bend contends only that the verb "imputed" adds a distinct, further constraint on the scope of the insurance and the liability here is not "imputed" to Sundance as a result of Szarek's acts. Liability for negligence may be imputed where "the person to whom the negligence is imputed *** had a legal right to control the action of the person actually negligent. Negligence in the conduct of another will not be imputed to a party if he did not authorize such conduct, participate therein, or have the right or power to control it." *Johnson v. Turner*, 319 Ill. App. 265, 280, 49 N.E.2d 297 (1943). In *Brooks v. Snyder*, 302 Ill. App. 432, 436, 24 N.E.2d 55 (1939), the court held:

> " 'Where an owner is riding in an automobile which is being driven by another in an improper manner, and the evidence does not show a contractual surrender nor an abandonment of the owner's right to control, the inference is warranted that the owner knew of and permitted the improper operation, and *** the driver's negligence is imputed to him ***.' "

■ Liability under the Act derives in part from the liable party's

right to control potentially dangerous activities at the construction site.

> "[Although] liability under the Structural Work Act properly attaches only to those 'having charge of' the operation or construction who have wilfully violated the provisions of the Act, this does not mean that persons found liable thereunder are necessarily active wrongdoers. *** [T]here can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury?" *Miller v. DeWitt*, 37 Ill. 2d 273, 291, 226 N.E.2d 630 (1967).

Our supreme court has since abandoned the distinction between active and passive negligence established in *Miller*, at least insofar as that distinction applied to actions for implied indemnity among jointly liable tortfeasors. See *Allison v. Shell Oil Co.*, 113 Ill. 2d 26, 495 N.E.2d 496 (1986). But the quoted observation remains true. A party may be liable under the Act even though another party's conduct causes the injury, if the former had charge of the site and could have known of the dangerous acts. *Quilico v. Union Oil Co.*, 58 Ill. App. 3d 87, 98, 374 N.E.2d 219 (1978).

To accomplish its purposes of protecting construction workers, the Act renders all parties having charge of the work liable for injuries resulting from any dangerous conditions about which they should have known. *Davis v. Commonwealth Edison Co.*, 61 Ill. 2d 494, 501-02 (1975). Thus, as the court used the term "imputed" in *Johnson* and *Brooks*, the liability of an actively negligent party may be imputed to one who had the right to control the construction.

West Bend cites *Motor Vehicle Casualty Co. v. GSF Energy, Inc.*, 193 Ill. App. 3d 1, 549 N.E.2d 884 (1989), for the proposition that liability under the Act cannot be imposed vicariously, and from this West Bend concludes that such liability cannot be imputed, within the meaning of its policy. The case does not stand for the proposition stated, which is contrary to established law. If a corporation employs a foreman to take charge of construction and the foreman violates the Act, the corporation is liable, vicariously, for its employee's acts. *Ilic v. Henry Crown & Co.*, 97 Ill. App. 3d 231, 234-35, 422 N.E.2d 892 (1981). Corporations, which necessarily act through their agents (*Classroom Teachers Ass'n v. Board of Education of the United Township High School District No. 30*, 15 Ill. App. 3d 224, 229, 304 N.E.2d 516 (1973)), are vicariously liable for their employees' violations of the Act, and those violations are imputed to the corporation. See *Johnson*, 319 Ill. App. at 280.

■ The court in *Motor Vehicle* held only that a subcontractor's agreement to indemnify the general contractor for liability under the Act contravened "An Act in relation to indemnity in certain contracts" (Indemnity Act) (Ill. Rev. Stat. 1983, ch. 29, par. 61). Szarek here agreed to purchase insurance for Sundance, and such agreements do not violate the Indemnity Act. *Lehman v. IBP, Inc.*, 265 Ill. App. 3d 117, 123, 639 N.E.2d 152 (1994).

In *Lehman* a contractor required the subcontractor to purchase insurance to protect the general contractor from liability " 'resulting from the intentional and/or negligent acts or omissions' " of the subcontractor. *Lehman*, 265 Ill. App. 3d at 121. When an injured worker sued the general contractor for violations of the Structural Work Act, the general contractor discovered that the subcontractor failed to name it as an additional insured under the policy it purchased. The general contractor sued the subcontractor for breach of the contract by failing to purchase the requisite insurance. The trial court dismissed the lawsuit and the appellate court reversed. The court held that the contract required the subcontractor to purchase insurance protecting the general contractor from liability resulting from the subcontractor's conduct, and the general contractor's liability under the Structural Work Act qualified for the insurance. *Lehman*, 265 Ill. App. 3d at 121-22. The difference between a contract to indemnify and a contract to procure insurance made *Motor Vehicle* inapplicable. *Lehman*, 265 Ill. App. 3d at 122.

*Motor Vehicle* similarly does not apply to the interpretation of the insurance contract here. As the court explained in *Duffy v. Poulos Brothers Construction Co.*, 225 Ill. App. 3d 38, 42-43, 587 N.E.2d 1038 (1991), the Act reflects a public policy to encourage contractors to take special care in providing safe working conditions at construction sites. The Act further protects construction workers by preserving supplemental sources of income, from insurance, to compensate injured workers. Thus, permitting a contractor to seek indemnity from a subcontractor opposes the purposes of the Act, but permitting an injured construction worker to recover from the contractor's insurers promotes the Act's purposes.

■ "In Illinois, as in many other jurisdictions, if an insurer does not intend to insure against a risk likely to be inherent in the insured's business, the insurer should expressly exclude that risk from the coverage of the policy." *Dash Messenger Service*, 221 Ill. App. 3d at 1014. Construction work frequently entails a risk of injury due to violations of the Act. The insurance policy here has no provision clearly excluding coverage for violations of the Act or other statutory torts, although West Bend easily could have modified its policy so to provide. See

*National Union*, 158 Ill. 2d at 123. We hold that the policy here could provide coverage for violations of the Act, if Szarek or its employees committed negligent acts which resulted in Sundance's liability for failure to exercise its right to control Szarek's dangerous activities.

■ West Bend relies on *dicta* in *American Country Insurance Co. v. Kraemer Brothers, Inc.*, 298 Ill. App. 3d 805, 814, 699 N.E.2d 1056 (1998), to show that the policy covered only the rare instance in which a contractor may be held strictly liable for the subcontractor's acts. Because that court did not consider the authority of *National Union* and *Dash*, and ignored the purposes of the Act as explained in *Duffy*, we decline to follow the *dicta* to the extent that it may be incompatible with our decision.

A few days before we heard oral argument in this case, another panel of this court decided *American Country Insurance Co. v. Cline*, 309 Ill. App. 3d 501 (1999). The plaintiff in that case insured a subcontractor under a general liability policy and accepted the general contractor as an additional insured under the policy. The policy limited coverage for the additional insured to liability resulting from the subcontractor's conduct. The appellate court, relying on the *dicta* from *Kraemer Brothers*, held that the limitation did not violate public policy or render coverage illusory. *Cline*, 309 Ill. App. 3d at 511. We similarly find the limitation in West Bend's policy enforceable, and Great American may recover only to the extent it shows Sundance's liability resulted from Szarek's conduct. The court in *Cline*, 309 Ill. App. 3d at 510, specifically found that the policy at issue there did not limit coverage for additional insureds solely to cases involving strict liability. We add that the similar policy involved in this case includes coverage for a cause of action under the Act if the general contractor's liability results from the subcontractor's conduct.

We also agree with several distinctions the *Cline* court drew between *Cline* and our decision in *West Bend*. *Cline*, 309 Ill. App. 3d at 515. The pleadings in *Cline* did not allow for the possibility that the subcontractor's conduct alone led to the general contractor's liability. The court in *Cline*, like this court in *West Bend*, 238 Ill. App. 3d at 337, and the court in *Kraemer Brothers*, 298 Ill. App. 3d at 814, looked to both the complaint and the general contractor's third-party complaint to determine whether the allegations showed the insurer could be liable. The court held:

> "The allegations in Cline's complaint do not raise the possibility that [the subcontractor] was in charge of work or that its conduct caused the underlying injury. Even if we do look to the third-party complaint, [the general contractor's] contribution claim acknowledges the possibility of its own negligence and liability. This sort of

claim lies outside the scope of the additional insured endorsement because it does not allege the sole negligence of [the subcontractor]." *Cline*, 309 Ill. App. 3d at 515.

We see no basis for the apparent suggestion that an insured may be barred from pleading and proving facts showing an entitlement to coverage, even if the original complaint excludes such facts and the insured must plead the facts in a third-party complaint. The complaint and the third-party complaint here sufficiently allege that Sundance became liable due to Szarek's acts, imputed to Sundance because of its control over the construction site. As the court found in *Cline*, the difference in the allegations requires the court to reach different results in the two cases.

West Bend also argues that Great American's agreement with Casualty, Szarek's worker's compensation insurer, vitiates this suit. Casualty paid Bass $165,239.15 in worker's compensation, so it had a lien for that amount against any sums Bass recovered from other sources for the injuries. See *Swendsen v. Brighton Building & Maintenance Co.*, 35 Ill. App. 3d 987, 343 N.E.2d 42 (1976). Casualty accepted $40,000 from Great American to waive its lien, thereby allowing Bass to retain a greater portion of the settlement. We see no basis for inferring, from Casualty's partial waiver of its lien, that Great American compromised Sundance's rights against West Bend under the terms of the insurance contract which named Sundance as an additional insured.

Great American has alleged that Szarek's employees negligently removed braces from the structure supporting Bass and that action resulted in Sundance's liability. West Bend has denied the allegations. Great American presented only transcripts of unsworn interviews, not affidavits or depositions, in support of its allegations. The trial court here correctly observed that these allegations remain neither proved nor disproved. The case presents a material question of fact concerning the acts of Szarek's employees and the cause of Bass' injury. Therefore we reverse the decision granting West Bend summary judgment, and we remand for further proceedings consistent with this opinion.

Reversed and remanded.

COUSINS, P.J., and McBRIDE, J., concur.