SECOND DIVISION 

November 4, 2003

Nos. 1-02-1353 & 1-02-1395, Consolidated

PEKIN INSURANCE COMPANY, 

Plaintiff-Appellee and Cross-Appellant,

v.

PULTE HOME CORPORATION,  

Defendant-Appellant and Cross-Appellee 

(Kevin P. Brockman,

Plaintiff).

)))))))))

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 00 CH 15248

Honorable

Nancy J. Arnold,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

We review a declaratory judgment action of some procedural complexity in which an insurer challenged its duty both to defend and indemnify an additional insured under the insurer's policy.  The dispute generated two appeals.  In the first, decided February 23, 2000, we affirmed a trial court finding that the insurer's reservation of rights letter was defective and waived the insurer's right to contest a duty to defend.  
Pekin Insurance Company v. Pulte Home Corporation
, No. 1-99-1128 (2000) (unpublished order under Supreme Court Rule 23) (
Pekin I
). 

The second (and present) appeal asks us to decide the impact of 
Pekin I
 on the insurer's duty to defend a refiled complaint.  We must also consider whether the trial court may go beyond the allegations of an underlying complaint to decide whether an additional insured's potential imputed liability triggered the insurer's duty to indemnify under the additional insured endorsement.  We conclude that our ruling in 
Pekin I
, that the insurer waived the right to contest its duty to defend, is the law of the case and precludes relitigation of the issue in subsequent litigation involving identical parties.  We also conclude that, since the issue of imputed liability would not and could not have been litigated in the underlying action, the trial court must go beyond the allegations of the underlying complaint to address the question of indemnity.  We reverse the trial court's ruling that the insurer had no duty to defend or indemnify the additional insured based on the allegations of the refiled complaint.  We remand for consideration of the indemnity issue.  We do not reach the trial court's denial of Pekin's defense costs in light of our finding that Pekin had a duty to defend. 

 
Kevin Brockman, the underlying plaintiff, was injured in a construction accident on February 23, 1994.  Brockman was an employee of a subcontractor, S&M Exteriors.  Pulte was the project's general contractor.  The contract between Pulte and S&M required that Pulte be named as an additional insured under S&M's policy.  S&M was insured by Pekin.  Pekin issued an additional insured endorsement that covered Pulte, but only to the extent that Pulte's liability could be imputed to S&M.  The endorsement read:

"WHO IS AN INSURED is amended to include as an insured the person or organization shown in the Schedule as an additional insured.  That entity shall be covered for all liability for bodily injury, property damage or death that are imputed to it as a result of your actions or conduct on this policy."

Brockman filed a two-count complaint only
 against Pulte on February 16, 1996.  The complaint alleged common law negligence and violations of the Structural Work Act (the Act) (740 ILCS 150/1 
et seq
. (West 1994)).  S&M was not named in the complaint.  Pulte tendered the defense of the Brockman suit to Pekin on March 21, 1996.  Pekin accepted the tender under a reservation of rights in a letter sent to Pulte on May 20, 1996.
  Pulte filed a third-party complaint against S&M on June 11, 1997.  S&M was defaulted on December 5, 1997, for failure to appear or answer the third-party complaint.   

Pekin filed a complaint for declaratory judgment on December 9, 1996, seeking a declaration that it had no duty to defend or indemnify Pulte under the additional insured endorsement.  The trial court found that Pekin's May 20, 1996, reservation of rights letter applied only to the duty to indemnify and waived the right to contest the duty to defend.  We affirmed this ruling in  
Pekin I
, slip op. at 5-6. 

Brockman voluntarily dismissed the underlying complaint on August 18, 1999, while 
Pekin I
 was pending on appeal.  Brockman then refiled an identical complaint on September 3, 1999.  Pulte retendered  the defense of the 1999 complaint to Pekin on August 29, 2000.  Pekin responded with a second reservation of rights letter on September 22, 2000, in which Pekin clearly reserved its right to deny a defense and indemnity to Pulte.  Pekin followed this up with a second complaint for declaratory judgment.  This complaint, in keeping with the second reservation of rights letter, sought a declaration that Pekin was not obligated to defend or indemnify Pulte against the 1999 Brockman complaint.  

The underlying 1999 Brockman lawsuit was tried on January 8 and 9, 2001.  Pekin provided a defense.  After a bench trial, the judge entered an order in Brockman's favor and awarded $197,481 in damages on January 16, 2001.  Pekin then filed an amended complaint in its pending action for declaratory judgment.  

On February 6, 2001, Pulte filed an amended motion to dismiss the declaratory judgment action under section 2-619(a)(4) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619(a)(4) (West 2000)).  The motion sought to dismiss part of Pekin's complaint that sought a declaration that Pekin had no duty to defend Brockman's lawsuit.  The motion was based on and cited to our holding in 
Pekin I
 that Pekin had waived the right to contest its duty to defend.  
Pekin I
, slip op. at 5-6.  The trial court denied the motion on June 6, 2001.  The trial court found that the refiled Brockman complaint in 1999 was a new action in which Pekin could reassert its reservation of rights to defend.

The parties then filed cross-motions for summary judgment.  On January 15, 2002, the trial court entered an order denying Pulte's motion for summary judgment and granting Pekin's cross-motion.  The trial court found that Pekin had no duty either to defend or indemnify Pulte against the 1999 Brockman complaint under the additional insured endorsement.  But Pekin's request for reimbursement of defense costs was denied in the same order, without explanation.

Pulte then filed a timely appeal, arguing that the trial court erred in denying its section 2-619(a)(4) motion to dismiss based on our ruling in 
Pekin I
.  Pulte also argues that there is an issue of fact as to whether Pekin had a duty to indemnify under the additional insured endorsement.  Pekin cross-appeals the denial of defense cost reimbursement.

Our review on appeal extends to both the January 15, 2002, summary judgment order and the June 6, 2001, order denying Pulte's section 2-619(a)(4) motion to dismiss.  An appeal from a final judgment draws into question all earlier nonfinal orders that produced the judgment.  
Burtell v. First Charter Service Corp.
, 76 Ill. 2d 427, 433, 394 N.E.2d 580 (1979); 
Hough v. Kalousek
, 279 Ill. App. 3d 855, 863-64, 665 N.E.2d 433 (1996).  

We first consider what impact our ruling in 
Pekin I
 has on this appeal.  Pulte argues that our ruling in 
Pekin I
 estops Pekin from contesting its duty to defend Pulte against the refiled 1999 complaint.  Pekin responds that the voluntary dismissal of the first complaint 
extinguished its duty to defend.  That duty arose out of a defective reservation of rights letter written in response to the first complaint.  The later refiling, Pekin asserts, is a new cause of action allowing Pekin to claim a new reservation of rights to its duty both to defend and indemnify. 

Relying on 
Dubina v. Mesirow Realty Development, Inc.
, 178 Ill. 2d 496, 687 N.E.2d 871 (1997), Pekin argues that a refiling of a voluntarily dismissed complaint is a new and separate action.  
Dubina
, 178 Ill. 2d at 504.  Pekin then reasons that the refiling is a new claim under the policy, allowing Pekin to reserve its rights without regard to an earlier defective reservation of rights.  We disagree. 

Our supreme court in 
Dubina
 considered whether the appellate court lost jurisdiction when the plaintiff refiled a voluntarily dismissed complaint.  
Dubina
, 178 Ill. 2d at 501-02.  The court reasoned that a refiled action is a new action, not a continuation of the old action.  A refiling would not revest the trial court with the jurisdiction lost when the notice of appeal was filed.  
Dubina
, 178 Ill. 2d at 504.  The court then concluded that once the requirements for appeal under Rule 301 were satisfied, a refiling could not defeat appellate jurisdiction.  
Dubina
, 178 Ill. 2d at 504.  The court went on to note that the opposite conclusion would create uncertainty about appellate jurisdiction:

"If a plaintiff refiled an action at any point during the appeal of the original action, this refiling would destroy appellate jurisdiction.  A plaintiff could therefore defeat jurisdiction by strategically choosing to refile the action at any point in the appellate process.  This court will not permit such procedural maneuvering to involuntarily deprive [the defendant] of its right to appeal now, as permitted by Rule 301."  
Dubina
, 178 Ill. 2d at 507.    

The supreme court's reasoning in 
Dubina
 is instructive here, even though 
the case does not address the effect of a voluntary dismissal in the context of an insurance coverage analysis.

Dubina
 holds that the voluntary dismissal statute cannot be used to deprive litigants of vested rights.  
Dubina
, 178 Ill. 2d at 507.   In 
Dubina
 the vested right was the entitlement to an appeal under Rule 301.  The right to appeal is not an issue in this case.  At issue is the law of the case doctrine.

The law of the case doctrine requires that where an issue has been litigated and decided, a court's unreversed decision on that question of law or fact settles that question "for all subsequent stages of the suit."  
Norton v. City of Chicago
, 293 Ill. App. 3d 620, 624, 690 N.E.2d 119 (1997); 
Penn v. Gerig
, 334 Ill. App. 3d 345, 352, 778 N.E.2d 325 (2002).  In 
Pekin I
, we decided as a matter of law that Pekin had waived the right to contest its duty to defend Pulte against the underlying complaint because of a defect in the wording of the reservation of rights letter.  
Pekin I
, slip op. at 5-6.  That ruling is binding on identical parties in later litigation and is binding on us in this subsequent appeal.  
Norton
, 293 Ill. App. 3d at 624.  But Pekin argues that the voluntary dismissal of the underlying complaint and its subsequent refiling (a new case under 
Dubina
) create a fresh slate for Pekin.  Pekin's argument suffers from two flaws: (1) the argument is inconsistent with its conduct in 
Pekin I
; and (2) the argument assumes  that an insurer's duty to defend based on a given set of facts is discharged by a voluntary dismissal and may be relitigated in a subsequent action based on the same set of facts.  Pekin overlooks that the voluntary dismissal happened while 
Pekin I
 was pending on appeal.  If, as Pekin now claims, the voluntary dismissal in and of itself terminated Pekin's obligations under the policy, there was no need for us to issue a ruling on whether Pekin had waived the right to contest its duty to defend.  But instead of seeking a dismissal of the appeal it had filed on learning that the underlying complaint had been dismissed, Pekin pursued the appeal to completion.  Pekin's conduct following the dismissal of the underlying complaint during 
Pekin I
 undermines the argument it now makes–that the ruling in 
Pekin I
 has no bearing on this subsequent appeal.  

Pekin's argument also assumes that an insurer's duty to defend is always discharged if the underlying plaintiff voluntarily dismisses his complaint.  Pekin cites no case law for this proposition.  Our research reveals that, since an insurer's duty to defend arises from the policy, the scope of that duty requires an examination of the undertaking as set out in the policy.  
Zurich Insurance Co. v. Raymark Industries, Inc.
, 118 Ill. 2d 23, 55, 514 N.E.2d 150 (1987); 
Country Mutual Insurance Co. v. Andersen
, 257 Ill. App. 3d 73, 80, 628 N.E.2d 499 (1993).  See also 
American Standard Insurance Co. v. Basbagill
, 333 Ill. App. 3d 11, 16, 775 N.E.2d 255 (2002) (duty to defend is a creature of contract, the scope of which is determined by construing the policy).  Policy construction is a question of law we decide 
de novo
, at the center of which is the parties' intentions.  
Basbagill
, 333 Ill. App. 3d at 16; 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108, 607 N.E.2d 1204 (1992).   

The plain language of the policy here reads:

"(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C."

This clause announces the temporal reach of Pekin's duty to defend: the time before the policy limits are paid in satisfaction of a settlement or judgment.  The intent would be defeated were we to agree with Pekin that the voluntary dismissal of the underlying complaint discharged its duty to defend and that a new and separate duty was triggered when the underlying complaint was refiled.

The better reasoned approach, we believe, is to find that the initial filing of the lawsuit in 1996 triggered Pekin's duties to defend.  The voluntary dismissal, which  was not an adjudication on the merits and did not require a payment of the policy limits, did not resolve Pekin's duty to defend under  the policy.  That issue was resolved when Pekin pursued its appeal from the trial court order in the first case and we affirmed the trial court finding of a duty to defend.  That resolution binds identical parties in subsequent litigation based on the policy.  
Norton
, 293 Ill. App. 3d at 624.  We turn to Pekin's duty to indemnify.

The duty to indemnify is separate from and narrower than the duty to defend.  
Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc.
, 332 Ill. App. 3d 326, 335, 773 N.E.2d 707 (2002).  The duty to indemnify arises only when the insured becomes legally obligated to pay damages in an underlying action that gives rise to a claim under the policy.  
Travelers Insurance Co. v. Eljer Manufacturing, Inc.
, 197 Ill. 2d 278, 293, 757 N.E.2d 481 (2001).  The duty turns on whether the claim is covered by the policy.  
Employers Reinsurance
, 332 Ill. App. 3d at 336.  Indemnity in this case turns on whether negligence attributable to S&M, the named insured under Pekin's policy, can be imputed to Pulte under an additional insured endorsement.  Pekin contends the answer to that question is "no" based on the way the underlying complaint was drafted, on the way the case was tried, and on the trial court's judgment order finding that only Pulte was liable for the plaintiff's injuries.

But Pekin's reliance on the absence of S&M as a named defendant in the underlying complaint and the trial court's finding that only Pulte was liable overlooks a component of the indemnity analysis.  

The underlying plaintiff, an employee of S&M, covered by workers' compensation, had no common law remedy against S&M.  There was no reason to name S&M as a defendant in his complaint.  
National Union Fire Insurance Co. of Pittsburgh v. R. Olson Construction Contractors, Inc.
,  329 Ill. App. 3d 228, 233, 769 N.E.2d 977 (2002).  Nor can the trial court's judgment order in the underlying trial on indemnity preclude consideration of issues in the declaratory judgment action now on review.  The issue in the underlying action was whether Pulte was liable under the Structural Work Act for the plaintiff's injuries.  But the question we address is whether liability could be imputed to Pulte because of negligence attributable to S&M.  The issue of imputed liability is germane only to coverage, not liability.  It could not and would not have been litigated in the underlying case.  
Schal Bovis, Inc. v. Casualty Insurance Co.
, 315 Ill. App. 3d 353, 368, 732 N.E.2d 1179 (2000).  This is not to say that the trial court's order in the underlying trial is irrelevant, only that its impact in this coverage analysis is not controlling.  Our analysis in 
Great American Insurance Co. v. West Bend Mutual Insurance Co.
, 311 Ill. App. 3d 534, 723 N.E.2d 1174 (2000), guides our analysis of whether a finding of liability under the Structural Work Act can be imputed to another entity for indemnity purposes.  

West Bend
 involved an additional insured endorsement that covered an additional insured only for liability imputed to it as a result of actions of the named insured.  
West Bend
, 311 Ill. App. 3d at 536.   We determined in an earlier 
West Bend
 appeal that allegations of Structural Work Act violations in the underlying plaintiff's complaint gave rise to the possibility of coverage that would  trigger West Bend's duty to defend the additional insured.  
West Bend Mutual Insurance Co. v. Sundance Homes, Inc.
, 238 Ill. App. 3d 335, 337, 606 N.E.2d 326 (1992).  The subsequent appeal addressed West Bend's duty to indemnify the additional insured following a settlement.  
West Bend
, 311 Ill. App. 3d at 536-37.  Great American, another insurer, sought to recover funds paid in settlement from West Bend under the additional insured endorsement.  Great American's complaint for declaratory judgment alleged that the named insured's acts either caused or contributed to cause the underlying plaintiff's injuries.  
West Bend
, 311 Ill. App. 3d at 536-37.  West Bend filed a motion for summary judgment and argued that the additional insured's liability under the Act could not qualify as imputed liability.  
West Bend
, 311 Ill. App. 3d at 537.  The trial court agreed and found that the settlement arose only from the negligent conduct of the additional insured.  The trial court also noted that the cause of the accident remained undetermined.  
West Bend
, 311 Ill. App. 3d at 537.  We reversed.  We found that West Bend's denial of Great American's allegations, that the named insured's conduct caused the accident that led to the additional insured's liability to the underlying plaintiff, created an issue of fact relating to the nature of the named insured's acts and the cause of the underlying plaintiff's injury.   The case was remanded for trial.  
West Bend
, 311 Ill. App. 3d at 541.  

In reaching this conclusion, we first noted that the nature of liability under the Structural Work Act was such that there could be degrees of fault among several actors, not just active wrongdoers.  Liability under the Act is triggered by "having charge of" the work.  
West Bend
, 311 Ill. App. 3d at 538, citing 
Miller v. DeWitt
, 37 Ill. 2d 273, 291, 226 N.E.2d 630 (1967).  The Act imposes liability for injuries resulting from dangerous conditions on all parties having charge of the work.  
Davis v. Commonwealth Edison Co.
, 61 Ill. 2d 494, 501-02, 336 N.E.2d 881 (1975).  Since liability may be imputed where "the person to whom the negligence is imputed *** had a legal right to control the action of the person actually negligent" (
Johnson v. Turner
, 319 Ill. App. 265, 280, 49 N.E.2d 297 (1943)), we reasoned that liability of an actively negligent party may be imputed to one who had the right to control the construction.  
West Bend
, 311 Ill. App. 3d at 538.  "[T]he Act reflects a public policy to encourage contractors to take special care in providing safe working conditions."  
West Bend
, 311 Ill. App. 3d at 539, citing 
Duffy v. Poulos Brothers Construction Co.
, 225 Ill. App. 3d 38, 42-43, 587 N.E.2d 1038 (1991).  "[P]ermitting an injured construction worker to recover from the contractor's insurers promotes the Act's purposes."  
West Bend
, 311 Ill. App. 3d at 539.  We then concluded that West Bend would be required to indemnify an additional insured if a named insured committed negligent acts that resulted in the additional insured's liability to the underlying plaintiff.  
West Bend
, 311 Ill. App. 3d at 540. We believe the 
West Bend
 analysis is appropriate here.  

Pulte's liability in the underlying action here was premised on a violation of the Structural Work Act.  The trial court found that Pulte had control of the work and that it "knew or *** should have known of the dangers inherent in sending a worker in bad weather to a job site expecting that worker to use a ladder at 12 foot heights under conditions of snow and ice."  The court then found that the "slippery surface under the foot of plaintiff's ladder, combined with an inability to secure the top of the ladder because of ice, proximately caused plaintiff's fall."

The relevant materials submitted in support of Pulte's motion for summary judgment in the declaratory judgment action included a copy of the roofing subcontract with S&M, the underlying complaint, Pekin's policy and the trial court's memorandum order entered in the underlying action.   The underlying complaint alleged and the roofing subcontract showed that S&M had control of the work for purposes of liability under the Act.  The subcontract also required S&M to furnish all materials needed to complete the roof installation.  The findings of fact in the memorandum order show that the underlying plaintiff first reported to an S&M supervisor on the date of the accident.  The underlying plaintiff testified that he expected to be sent home because of inclement weather.  But the trial court found that the S&M supervisor ordered the plaintiff to report to the Pulte jobsite.  Pulte then directed the plaintiff to repair a roof, where he was later injured when his ladder slipped.  As in 
West Bend
, Pulte's submissions create an issue of fact as to whether S&M's conduct was  negligent and if that negligence contributed to Pulte's liability to the underlying plaintiff.  

The trial court's finding that Pulte was negligent in sending a worker out in inclement weather could apply equally to S&M.  The trial court found that S&M had sent the plaintiff to the Pulte jobsite despite the plaintiff's testimony that he expected to be sent home.  The trial court found that the plaintiff was injured when his ladder slipped on ice.  The trial court noted that the ladder could not be secured at the top to prevent it from slipping.  Since the S&M subcontract required S&M to furnish all materials necessary to complete the roof installation, it could be concluded that the plaintiff was using a ladder furnished by S&M.  If that ladder was defective, S&M could be found negligent in light of the trial court's finding that the failure to secure the ladder at the top, coupled with the ice, caused the plaintiff to fall.  So there are issues of fact concerning S&M's acts and their relation to the cause of the underlying plaintiff's fall.  The trial court's grant of summary judgment to Pekin was error.

We are mindful of Pekin's reliance on 
American Country Insurance Co. v. Kraemer Brothers, Inc.
, 298 Ill. App. 3d 805, 699 N.E.2d 1056 (1998), and 
American Country Insurance Co. v. Cline
, 309 Ill. App. 3d 501, 722 N.E.2d 755 (1999).  We find both cases distinguishable. 

In 
Kraemer
, the court found that the insured's breach of a policy provision relieved the insurer of its duty to defend.  
Kraemer
, 298 Ill. App. 3d at 813.  The 
Kraemer
 court then noted in 
dicta
 that the additional insured endorsement which provided coverage for imputed liability was not triggered because the relevant pleadings (the underlying complaint and accompanying third-party action) alleged only the  negligence of the general contractor (the additional insured) and failed to allege negligence attributable to the subcontractor (the named insured).  
Kraemer
, 298 Ill. App. 3d at 814.  
Kraemer
 refuted the claim that the additional insured coverage was illusory and suggested that the policy applied when a contractor was held strictly liable for a subcontractor's acts.  
Kraemer
, 298 Ill. App. 3d at 814.  We declined to follow this 
dicta
 in 
West Bend
:

"Because [the Kraemer court] did not consider the authority of 
National Union
 and 
Dash
, and ignored the purposes of the Act as explained in 
Duffy
, we decline to follow the 
dicta
 to the extent that it may be incompatible with our decision."  
West Bend
, 311 Ill. App. 3d at 540.  

Since 
Cline
 adopted and followed the 
dicta
 in 
Kraemer
 (
Cline
, 309 Ill. App. 3d at 511-12), with which we disagreed in 
West Bend
, that case is not applicable here.

We need not address Pekin's arguments in its cross-appeal challenging the trial court's denial of defense cost reimbursement in light of our conclusion that Pekin had a duty to defend. 

We reverse the trial court's finding that Pekin owed no duty to defend or indemnify Pulte.  Pekin is bound by our finding in 
Pekin I
 that it waived the right to contest its duty to defend.  We remand for a trial on the issue of indemnity under the additional insured endorsement.   

Reversed and remanded with directions.

BURKE and McBRIDE, JJ., concurring.