AMERICAN STATES INSURANCE COMPANY, Plaintiff and Counter-defendant-Appellant and Cross-Appellee, v. CFM CONSTRUCTION COMPANY, Defendant and Counterplaintiff-Appellee (Michigan Mutual Insurance Company, Defendant and Counterplaintiff-Appellee and Cross-Appellant; Francisco Flores, Defendant).

Second District   No. 2—08—0781

Opinion filed January 12, 2010.—Rehearing denied March 29, 2010.

Keith G. Carlson, of Carlson Law Offices, of Chicago, for appellant.

R. Howard Jump and Mei Chen, both of Jump & Associates, of Chicago, for appellee Michigan Mutual Insurance Company.

JUSTICE McLAREN delivered the opinion of the court:

American States Insurance Company (American) appeals from part of a judgment of the trial court denying its motion for summary

judgment and granting summary judgment to CFM Construction Company (CFM) and Michigan Mutual Insurance Company (Michigan). The trial court ruled that American was required to pay Michigan half of the amount of a settlement Michigan paid under a policy it issued to a subcontractor, International Decorators, that worked for a general contractor, CFM. Michigan cross-appeals from part of the same judgment denying it and CFM attorney fees, costs, and prejudgment interest.

On appeal American argues that (1) the trial court correctly found that Michigan had no cause of action for equitable contribution or equitable subrogation; and (2) the trial court erred by relying solely upon a comparison of the policies' "other insurance" clauses to find that under those provisions Michigan could recover half of the settlement amount from American.

On cross-appeal, Michigan argues that (1) the trial court erred by failing to award it and CFM attorney fees and costs; and (2) the trial court erred by failing to award it and CFM prejudgment interest. We affirm.

## I. Facts

The following facts are not in dispute. This action arose out of an accident at a construction site in Libertyville, Illinois. CFM was the general contractor on the construction project. CFM subcontracted with NF Construction to provide carpentry services for the project. Gerald Kemp, an NF employee, was the construction supervisor at the site. American insured NF under a general liability policy. CFM was added as an additional insured under NF's American policy.

CFM also subcontracted with International Decorators on the project. Michigan insured International Decorators under a general liability policy. CFM was added as an additional insured under International Decorators' Michigan policy.

Francisco Flores, an employee of International Decorators, was injured when he fell from a scaffold at the construction site. Flores filed two separate lawsuits, against CFM and NF, alleging in each lawsuit that the named defendant was in charge of the work and had a duty to operate, manage, supervise, and control the construction site and the activities of the workmen thereon and that it allegedly did so negligently, resulting in Flores' injuries. The two lawsuits were consolidated for discovery and trial purposes.

CFM tendered its defense to Michigan. Michigan asked American to contribute to the defense of CFM but American refused. American then filed a declaratory action against CFM, seeking a declaration that it had no duty to contribute to the costs of defending CFM in the

Flores action. All parties moved for summary judgment. The trial court ruled in favor of CFM and Michigan and against American. American appealed. This court affirmed the trial court's judgment. *American States Insurance Co. v. CFM Construction Co.*, No. 2—05—0077 (2005) (unpublished order under Supreme Court Rule 23). We held that American owed a duty to defend CFM as an additional insured.

Before that appeal, Flores, Michigan, American, NF, and CFM executed a settlement agreement. Flores agreed to release all claims and causes of action against NF and CFM. Michigan paid $700,000; American agreed to pay only $200,000 on behalf of NF and Gerald Kemp. American refused to pay anything on behalf of CFM.

Michigan acquired an assignment of CFM's rights to sue American for breach of duty to defend and indemnify in the Flores lawsuit.

On remand, and after the settlement, American filed a second amended complaint against CFM and Michigan, seeking, *inter alia*, a declaration that it had no duty to indemnify CFM under its policy issued to NF. CFM and Michigan filed a second amended countercomplaint for declaratory judgment, seeking reimbursement for half of the $700,000 settlement amount. CFM and Michigan argued, *inter alia*, that Michigan was entitled to reimbursement from American based on the "other insurance" provisions and equitable contribution. CFM and Michigan also sought attorney fees, costs, and prejudgment interest from American. The parties filed motions for summary judgment. The trial court denied American's motion for summary judgment and granted summary judgment to CFM and Michigan, though denying fees, costs, and interest.

The trial court reasoned that Michigan could not recover under the theory of equitable contribution because the policies of Michigan and American "did not cover the same risk[s]." However, the trial court determined that both policies provided primary commercial general liability coverage and contained identical "other insurance" provisions (providing excess coverage). The trial court concluded, "The policy provisions therefore are canceled out and the cost of the CFM settlement must be shared." The trial court ordered American to pay Michigan $350,000. The trial court denied American's motion for reconsideration. American timely appealed, and Michigan filed a timely cross-appeal.

## II. Analysis

On appeal, American argues that the trial court erred by granting CFM and Michigan's motion for summary judgment, awarding Michigan $350,000 in reimbursement.

Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2008). Summary judgment is a drastic measure of disposing of litigation and should be granted only if the movant's right to judgment is clear and free from doubt. *Chatham Foot Specialists, P.C. v. Health Care Service Corp.*, 216 Ill. 2d 366, 376 (2005). When ruling on a motion for summary judgment, the court has a duty to construe the evidence in the light most favorable to the non-moving party and strictly against the movant. *Chatham Foot*, 216 Ill. 2d at 376. The appellate court applies a *de novo* standard of review to the trial court's grant or denial of a summary judgment motion. *Chatham Foot*, 216 Ill. 2d at 376.

## A. American's Appeal

### 1. Equitable Contribution

On appeal American argues that the trial court correctly decided that Michigan and CFM had no cause of action for equitable contribution. We will address this issue, because on review we may affirm on any basis supported by the record. *Northern Moraine Wastewater Reclamation District v. Illinois Commerce Comm'n*, 392 Ill. App. 3d 542, 563 (2009).

■ When an insurer has paid the entire loss, the doctrine of equitable contribution allows it to be reimbursed by other insurers that are also liable for the loss. *Cincinnati Insurance Co. v. American Hardware Manufacturers Ass'n*, 387 Ill. App. 3d 85, 114 (2008). The doctrine of equitable contribution "arises from a right, which is independent from the rights of the insured, to recover from a co-obligor who shares the same liability as the party seeking contribution." *Argonaut Insurance Co. v. Safway Steel Products, Inc.*, 355 Ill. App. 3d 1, 10-11 (2004). The purpose of the doctrine is to provide a remedy when one insurer has paid a debt that is equally owed by another insurer. *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange*, 325 Ill. App. 3d 970, 981 (2001). "The fact that one insurer undertakes the burden of a full settlement payment does not mean the insurer is a volunteer." *Chicago Hospital Risk*, 325 Ill. App. 3d at 981. Equitable "[c]ontribution applies to multiple, concurrent insurance situations and is only available where the concurrent policies insure the same entities, the same interests, and the same risks." *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 316 (2004).

American argues that equitable contribution does not apply, because the parties' policies insured completely different risks. American argues that American's policy insured CFM for CFM's liability arising out of NF's work, which had no connection to Flores or International Decorators; whereas Michigan's policy insured CFM for liability arising out of work by International Decorators, which was Flores' employer. We disagree with American.

It is well settled that when two insurers cover "separate and distinct risks," equitable contribution does not apply. *Home Insurance*, 213 Ill. 2d at 316. The term "risk" is not defined by the policies here, so the commonly understood dictionary definition is applicable. *Home Insurance*, 213 Ill. 2d at 321. "Risk," as it is used in the policies, is defined by Merriam-Webster's as "the possibility of loss or injury." Merriam-Webster's Collegiate Dictionary 1011 (10th ed. 1998). It is also defined as "the chance of loss" or the "degree of probability of such loss" (Webster's Third New International Dictionary 1961 (1986); see also Black's Law Dictionary 1328 (6th ed. 1990) ("the degree of hazard; a specified contingency or peril," "[i]n general, the element of uncertainty in an undertaking")). *Home Insurance*, 213 Ill. 2d at 321-22.

A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. However, if the words used in the policy are ambiguous, they will be strictly construed against the drafter. *Central Illinois Light Co.*, 213 Ill. 2d at 153. It is well settled that the construction of an insurance policy is a question of law and is an appropriate subject for disposition by way of summary judgment. *Illinois Farmers Insurance Co. v. Marchwiany*, 222 Ill. 2d 472, 476 (2006). Since the construction of an insurance policy is a question of law, our review is *de novo. Nicor, Inc. v. Associated Electric & Gas Insurance Services, Ltd.*, 223 Ill. 2d 407, 416 (2006).

CFM was added as an additional insured under American's NF policy pursuant to the following provision:

"WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization for whom you are performing

operations if you and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your *ongoing operations* performed for that insured." (Emphasis added.)

As we stated in our prior Rule 23 order, "although the contract between CFM and NF did not mention construction supervision, Gerald Kemp, an NF employee, acted in that capacity at the construction site." Further, "It is not clear from the record who paid Kemp. However, NF apparently did, because NF billed CFM several thousand dollars for construction supervision services." *American States Insurance Co.*, slip op. at 2.

We held: "Nothing in the policy says that those 'operations' must be related to the operations described in the contract. It appears, then, that the plain meaning of 'ongoing operations' refers to any ongoing work that NF was performing for CFM. 'Operation' is defined as 'performance of a practical work or of something involving the practical application of principles or processes.' Merriam-Webster's Collegiate Dictionary 813 (2001). This definition is certainly broad enough to cover NF's construction supervision." *American States Insurance Co.*, slip op. at 5.

Because CFM hired NF to supervise the construction, both American and Michigan insured the same risks. As the supervisor of construction, NF was responsible for supervising subcontractors, including International Decorators. Therefore, both American, through NF's supervision of the site, and Michigan insured CFM for supervisory liability arising out of International Decorators' acts or failures to act. Accordingly, the risks or " 'the possibilit[ies] of loss or injury' [citation]" (*Home Insurance*, 213 Ill. 2d at 322), due to NF's negligent supervision and International Decorators' negligence, were the same, *i.e.*, joint and several proximate causes.

In its reply brief, American argues that the trial court erred by ordering it to reimburse Michigan, because American had no duty to indemnify CFM for the underlying action. American argues that the underlying plaintiff, Flores, made incompatible tort claims: Flores' complaint against CFM alleged that CFM was the construction supervisor; his complaint against NF alleged that NF was the construction supervisor. American argues that, while we could accept both allegations as true for purposes of deciding the duty to defend, we should not accept them here, because the duty to indemnify is narrower than the duty to defend. American also asserts that NF denied that it was the construction supervisor.

It is well settled that the duty to indemnify is narrower than the duty to defend. See *Pekin Insurance Co. v. Pulte Home Corp.*, 344 Ill. App. 3d 64, 70 (2003). The duty to defend arises if, liberally construing the allegations in the underlying complaint in the insured's favor and against the insurer, there are factual allegations that potentially fall within coverage. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154-55 (2005). In contrast, the duty to indemnify arises only when the insured becomes legally obligated to pay damages in an underlying action that gives rise to a claim under the policy. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 293 (2001). The duty to indemnify turns on whether the claim is covered by the policy. *Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc.*, 332 Ill. App. 3d 326, 336 (2002).

American acknowledges that Flores' complaints were consolidated for trial. See *American States Insurance Co.*, slip op. at 3. American also acknowledges that we held that it had a duty to defend, stating in our Rule 23 order that: "When the actions were consolidated, the underlying complaints clearly alleged NF's role as construction supervisor." *American States Insurance Co.*, slip op. at 6. This is the law of the case. *Pekin Insurance*, 344 Ill. App. 3d at 69 ("where an issue has been litigated and decided, a court's unreversed decision on that question of law or fact settles that question 'for all subsequent stages of the suit' "), quoting *Norton v. City of Chicago*, 293 Ill. App. 3d 620, 624 (1997).

■ In this case, American has not provided any facts that demonstrate why our analysis in our prior decision regarding its duty to defend should be different from our analysis here regarding its duty to indemnify. American has provided no reasons to question the facts alleged in Flores' consolidated complaints. Although American states that NF denied that it was the construction supervisor, American has failed to cite to the record to support this claim and we have not been able to locate anything that does. Supreme Court Rule 341(h)(7) requires that a party's appellate arguments contain citations to the pages of the record on which the party relied. 210 Ill. 2d R. 341(h)(7). The failure to provide relevant citations to the record is a violation of Rule 341(h)(7) and results in forfeiture. See *Gomez v. The Finishing Co.*, 369 Ill. App. 3d 711, 723 (2006). Further, because Flores' complaints were consolidated for trial, we refuse American's invitation to interpret Flores' complaints as "incompatible," and instead read them together, as consolidated. After interpreting American's policy, we determine that the claim was covered. Thus, American had a duty to indemnify CFM.

Because we have determined that Michigan was entitled to reimbursement based on the doctrine of equitable contribution, the trial court properly granted CFM and Michigan's motion for summary judgment and ordered American to pay Michigan $350,000, or half of the $700,000 settlement.[1]

Further, because we affirm the trial court's judgment based on the doctrine of equitable contribution, we need not address American's argument that equitable subrogation does not apply.

### 2. "Other Insurance" Clauses

American argues that the trial court erred by relying on a comparison of the "other insurance" clauses to find that under those provisions Michigan could recover half of the settlement amount. Because we are affirming based on the doctrine of equitable contribution, we need not address this argument.

### B. Michigan's Cross-Appeal

### 1. The Trial Court Did Not Abuse Its Discretion by Denying Michigan and CFM's Request for Attorney Fees and Costs

In its cross-appeal, Michigan argues that the trial court erred by not finding American's action to be vexatious or in bad faith and failing to award Michigan and CFM attorney fees and costs under section 155 of the Insurance Code (Code) (215 ILCS 5/155 (West 2008)).

In the trial court, Michigan and CFM sought damages under section 155 of the Code, claiming that American's failure to settle this matter was vexatious and in bad faith. The trial court found that, although it disagreed with American's position, American's action was not vexatious or in bad faith.

Initially, American notes that CFM did not appeal the trial court's judgment and asserts that, therefore, we cannot address this issue since the right to recover damages under section 155 of the Code belonged to CFM alone. Essentially, American argues that Michigan has no standing to raise this issue on appeal. In Illinois standing requires "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). Because CFM assigned its rights to Michigan, Michigan is in the same position as CFM and may seek section 155 sanctions on CFM's behalf. See *Peerless Enterprises, Inc. v. Kruse*, 317 Ill. App. 3d 133, 142 (2000)

---

[1]We note that, because the parties' policy limits were the same ($1 million per occurrence), American must pay half of the settlement amount. See *Progressive Insurance Co. v. Universal Casualty Co.*, 347 Ill. App. 3d 10, 20 (2004) (in a cause of action for equitable contribution, the loss or settlement amount is prorated between the insureds based on policy limits).

("It is well settled that the rights and remedies available under section 155 can be extended to assignees of insureds"). Therefore, Michigan has standing to raise this issue on appeal.

∎ Section 155 of the Code provides:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000." 215 ILCS 5/155 (West 2008).

An insurer will not be liable for attorney fees and costs under section 155 of the Code merely because it litigated and lost the issue of insurance coverage. *Valdovinos v. Gallant Insurance Co.*, 314 Ill. App. 3d 1018, 1021 (2000). If a *bona fide* dispute existed regarding insurance coverage, the insurer's delay in settling a claim does not violate section 155. *"Bona fide"* is defined as "[r]eal, actual, genuine, and not feigned." Black's Law Dictionary 177 (6th ed. 1990). A trial court's decision to award attorney fees and costs under section 155 will not be disturbed absent an abuse of discretion. *Siwek v. White*, 388 Ill. App. 3d 152, 159-60 (2009). A trial court must consider the totality of the circumstances, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of her or his property. *Kruse*, 317 Ill. App. 3d at 144.

In their second amended countercomplaint, Michigan and CFM sought $37,661.60, alleging that American engaged in vexatious and unreasonable conduct and delay in the trial court and in the appellate proceeding in that: (a) American waited almost five months after CFM tendered its defense to Michigan to file its complaint for declaratory judgment; (b) during that almost five-month period, American defended NF against Flores and knew that CFM incurred significant fees and costs from the Flores suit; (c) American refused to participate in mediation to settle the Flores suit on behalf of CFM; (d) on many occasions American refused to cooperate to settle on CFM's behalf; and (e) in its second amended complaint, American continued to allege that it had no written contract to insure CFM and that CFM's liability did not arise from ongoing operations, even though the law of the case was established in a prior Rule 23 order by this court. Michigan adds

in its brief that American delayed paying half of CFM's defense fees and costs until December 20, 2006, when it knew of such fees and costs 10 months earlier.

■ Considering the totality of the circumstances, we cannot say that the trial court abused its discretion by denying Michigan and CFM attorney fees and costs. American waited almost five months after CFM tendered its defense to Michigan to file its complaint for declaratory judgment. Michigan sought contribution from American; three weeks later American refused. There was nothing inherently vexatious or unreasonable about the three-week period between notice to American and its refusal or the almost five-month period between CFM's tender to Michigan and American's declaratory judgment action. American articulated its policy defenses three weeks after it received notice of the underlying action, and there is nothing in the counterclaim suggesting that American's position was unreasonable, given that the duty to indemnify is narrower than the duty to defend. See *Pulte Home Corp.*, 344 Ill. App. 3d at 70. Further, the basis for American's appeal was not inherently vexatious or unreasonable, because the parties had a *bona fide* dispute regarding the effects of the "other insurance" provisions and whether the policies insured the same risks. The law and the facts in this case present questions upon which reasonable minds might differ. Thus, the trial court did not abuse its discretion by denying Michigan and CFM's request for section 155 attorney fees and costs.

### 2. The Trial Court Did Not Abuse Its Discretion by Denying Michigan and CFM's Request for Prejudgment Interest

■ Michigan argues that the trial court erred by denying Michigan and CFM's request for prejudgment interest. American argues that Michigan and CFM are not entitled to prejudgment interest, because their theory of recovery was based on equitable claims and not on a written contract.

In denying Michigan and CFM's request for prejudgment interest, the trial court stated that Michigan and CFM cited to no authority and provided no factual basis for their claim. A trial court's decision to award prejudgment interest is within its sound discretion and is subject to reversal only where there has been an abuse of discretion. *Cunningham v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 389 Ill. App. 3d 1065, 1077 (2009).

In this case, the record supports the trial court's statements. Michigan and CFM's complaint simply requested prejudgment interest, without citation to authority, factual support, or argument. In light of the record before us, we cannot say that the trial court abused

its discretion by denying Michigan and CFM's request for prejudgment interest. See *In re Marriage of Shurtz*, 382 Ill. App. 3d 1123, 1127 (2008).

Michigan cites to *Milligan v. Gorman*, 348 Ill. App. 3d 411 (2004), to support its argument. However, *Milligan* is distinguishable from the case at bar. In *Milligan*, it was clear that the defendant had breached a written settlement agreement. *Milligan*, 348 Ill. App. 3d at 416. In this case, it was not as clear that American breached an agreement. The trial court in this case found that, while it did not agree with American's position, American did not act in bad faith. The trial court did not abuse its discretion. Therefore, *Milligan* is not controlling here.

The judgment of the trial court of Lake County is affirmed.

Affirmed.

HUTCHINSON and JORGENSEN, JJ., concur.